LEO VAILLANCOURT *v.* NEW BRITAIN MACHINE/
LITTON ET AL.
(14503)

CALLAHAN, BORDEN, BERDON, NORCOTT and KATZ, Js.

---

Argued October 30, 1992—decision released January 12, 1993

*David A. Kelley,* with whom, on the brief, was *Dominick Statile,* for the appellants (named defendant et al.).

*Laurie Adler,* assistant attorney general, with whom were *Robin L. Wilson,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, and *Charles A. Overend,* assistant attorney general, for

the appellee (defendant Second Injury and Compensation Assurance Fund).

NORCOTT, J. The dispositive issue in this case is whether, under General Statutes (Rev. to 1983) § 31-349,[1] notice to transfer liability to the Second

[1] General Statutes (Rev. to 1983) § 31-349 provides in part: "The fact that an employee has suffered previous disability, or received compensation therefor, shall not preclude him from compensation for a later injury, nor preclude compensation for death resulting therefrom. If an employee who has previously incurred, by accidental injury, disease or congenital causes, total or partial loss of, or loss of use of, one hand, one arm, one foot or one eye, or who has other permanent physical impairment, incurs a second disability by accident or disease arising out of and in the course of his employment, resulting in a permanent disability caused by both conditions which is materially and substantially greater than that which would have resulted from the second injury alone, he shall receive compensation for the entire amount of disability, including total disability, less any compensation benefits payable or paid with respect to the previous disability, and necessary medical care, as elsewhere provided in this chapter, notwithstanding the fact that part of such disability was due to prior accidental injury, disease or congenital causes. The employer by whom the employee is employed at the time of the injury, or his insurance carrier, shall in the first instance pay all awards of compensation and all medical expenses provided by this chapter for the first one hundred four weeks of disability. As a condition precedent to the liability of the second injury fund, the employer or his insurance carrier must, ninety days prior to the expiration of the one-hundred-four-week period, notify the custodian of the second injury fund of the pending case and shall furnish to said custodian a copy of the agreement or award together with all information purporting to support his claim as to the liability of the second injury fund, and shall make available to the custodian all medical reports as the custodian shall desire. Failure on the part of the employer or the carrier to comply does not relieve the employer or carrier of its obligation to continue furnishing benefits under the provisions of this chapter. In the event the custodian shall reject the claim of the employer and its insurer, the question shall be submitted to the commissioner having jurisdiction, as promptly as possible, and the employer or carrier shall continue furnishing benefits until the outcome is finally decided, and if the employer or carrier prevails all payments made beyond the one-hundred-four-week period shall be reimbursed to the employer or carrier by the second injury fund. After the employer or its insurer has completed the payment for the one-hundred-four-week period, he shall file with the commissioner having jurisdiction, and with the custodian of the second injury fund, a form indicating that all compensation and

Injury and Compensation Assurance Fund (Fund) must be given to the Fund ninety days prior to: (1) the expiration of the first one hundred four weeks of the claimant's disability; or (2) the expiration of the first one hundred four weeks of compensation payments made to the claimant by his employer. The defendants New Britain Machine/Litton (New Britain Machine) and Travelers Insurance Company (Travelers)[2] appealed to the compensation review division from an order of the workers' compensation commissioner dismissing as

medical bills have been paid for the one-hundred-four-week period, and indicating thereon the date the custodian was notified of the pending case. Thereafter all responsibility for compensation and medical treatment shall be with the custodian of the second injury fund. If the subsequent injury of such an employee resulting from an accident arising out of and in the course of his employment shall result in the death of the employee, and it shall be determined that either the injury or death would not have occurred except for such preexisting permanent physical impairment, the employer or his insurance carrier shall, in the first instance, pay the funeral expense described in this chapter, and shall pay death benefits as may be due for the first one hundred four weeks. Ninety days prior to the expiration of the one-hundred-four-week period, the employer or his insurance carrier shall notify the custodian of the second injury fund of the pending case and shall furnish to said custodian a copy of the agreement or award. After the employer or its insurer has completed the payment for the one-hundred-four-week period, he shall file with the commissioner having jurisdiction, and with the custodian of the second injury fund, a form indicating that all compensation has been paid for the one-hundred-four-week period, and indicating thereon the date that the custodian was notified of the pending case. Thereafter all responsibility for compensation shall be with the custodian of the second injury fund. Employees shall not be denied any of the benefits provided by any provisions of this chapter by reason of the execution of an acknowledgment of physical defect, but the benefits specified in this chapter which would be payable except for the execution of such acknowledgment shall be paid entirely out of the second injury fund. Claims for such benefits shall be filed with the commissioner, who shall refer such claims to the custodian of the second injury fund as specified above. The custodian of the second injury fund may make payment by way of final settlement in any matter concerning the fund, subject to the approval of the commissioner, when it is for the best interests of the injured employee."

[2] The defendants New Britain Machine and Travelers are the appellants herein. Although the Fund is also a defendant, it is the appellee. We refer herein, therefore, to New Britain Machine and Travelers as the defendants.

untimely their request to transfer the claim of the plaintiff, Leo Vaillancourt (claimant), to the defendant Fund. The compensation review division sustained the decision of the workers' compensation commissioner. The defendants appealed from the decision of the compensation review division to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the decision of the compensation review division.

The following facts are relevant to this appeal. On September 18, 1980, the claimant sustained an injury to his back in the course of his employment with New Britain Machine. Although the injury initially did not interfere with the claimant's ability to work, his condition subsequently worsened and, on February 22, 1982, he underwent surgery. At that time he began to receive temporary total disability payments from Travelers, New Britain Machine's workers' compensation insurer. On June 16, 1986, the claimant's treating physician opined that the claimant had reached maximum medical improvement. Accordingly, the Travelers' benefit payments to the claimant were then converted from compensation for temporary total disability to compensation for a 15 percent permanent partial disability of the back.

Travelers first notified the Fund of its intent to transfer liability for the claim pursuant to § 31-349 on January 23, 1984.[3] Notice was not perfected, however, until

[3] General Statutes (Rev. to 1983) § 31-349 provides some relief to an employer whose employee suffers a work-related injury if such employee had a preexisting permanent physical impairment, thus making the compensable permanent disability greater than that which would have resulted from the second injury alone. See, e.g., *Lovett* v. *Atlas Truck Leasing,* 171 Conn. 577, 578, 370 A.2d 1061 (1976). The statute provides that the employer or his insurance carrier shall "pay all awards of compensation and all medical expenses provided by [the workers' compensation act] for the first one hundred four weeks of disability." The employer may thereafter transfer liability for the permanent disability payments to the Fund, provided that the statutory requirements are met.

February 15, 1984, when Travelers sent the Fund a voluntary agreement as required by § 31-349.[4] Had the litigation ceased at this point, both notices would have been untimely, as the statutory one hundred four week period would have commenced on the date of the claimant's surgery, making November 22, 1983, the latest date that timely notice could be given to the Fund.

Litigation stemming from the claimant's injury, however, continued. As a result of his back surgery, the claimant brought a medical malpractice suit against the surgeon who performed the operation.[5] Travelers intervened in this lawsuit pursuant to General Statutes (Rev. to 1983) § 31-293[6] to recoup workers' compensation benefits that it had already paid to the claimant. In October, 1989, the claimant settled his malpractice claim for $30,000, and Travelers received $7000 from the proceeds of the settlement.

[4] General Statutes (Rev. to 1983) § 31-349 provides in pertinent part: "As a condition precedent to the liability of the second injury fund, the employer or his insurance carrier must, ninety days prior to the expiration of the one-hundred-four-week period, notify the custodian of the second injury fund of the pending case and shall furnish to said custodian a copy of the agreement or award together with all information purporting to support his claim as to the liability of the second injury fund, and shall make available to the custodian all medical reports as the custodian shall desire."

[5] The record does not reflect when the malpractice action was commenced or when Travelers intervened in that action.

[6] General Statutes (Rev. to 1983) § 31-293 provides in relevant part: "When any injury for which compensation is payable under the provisions of this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may claim compensation under the provisions of this chapter . . . but such injured employee may proceed at law against such person to recover damages for such injury; and any employer having paid, or having become obligated to pay, compensation under the provisions of this chapter may bring an action against such other person to recover any amount that he has paid or has become obligated to pay as compensation to such injured employee. If either such employee or such employer brings such action against such third person . . . such other may join as a party plaintiff in such action . . . ."

Subsequent to their third party recovery, the defendants sought from the workers' compensation commissioner a determination regarding the timeliness of the February 15, 1984 notice to transfer liability for the claimant's permanent disability to the Fund. Travelers argued before the workers' compensation commissioner that its notice to the Fund was timely because, under its interpretation of § 31-349, the weeks of benefits amounting to the equivalent of the $7000 it had recovered in the third party malpractice action should not be counted in calculating the statutory period within which it was required to notify the Fund. Application of this interpretation of § 31-349 would extend the deadline for notice to the Fund to May 4, 1984. The commissioner rejected this argument, and concluded that Travelers' notice was untimely under § 31-349 and was not cured by the subsequent recovery in the malpractice case. Therefore, the commissioner dismissed Travelers' request to transfer the claim to the Fund.[7]

The defendants appealed to the compensation review division, which affirmed the commissioner's finding and award. The review division stated that "the 'one-hundred-four-week period' refers to weeks of disability, not to the net number of weeks of benefits paid calculated after credit was given for third party recovery." The review division noted that the defendants' interpretation of § 31-349 would impose different time requirements in different situations and would thus diminish the principle of uniformity intended by the notice provision.

On appeal to this court, the defendants claim that the compensation review division improperly affirmed the commissioner's decision that Travelers' notice to the

[7] The commissioner reaffirmed this decision in each of two subsequent decisions on motions to correct filed by Travelers arising out of the commissioner's original decision.

Fund was not timely under § 31-349. The defendants claim, alternatively, that: (1) their notice was timely because § 31-349 should be interpreted to require notice of transfer to the Fund ninety days prior to the one hundred fourth week of compensation payments made by the claimant's employer to the claimant; and (2) any delay in notice should be excused because the delay did not cause prejudice to the Fund. We disagree with both of these claims.

I

The defendants first claim that both the workers' compensation commissioner and the compensation review division improperly interpreted the phrase "one-hundred-four-week period" in § 31-349 to mean one hundred four weeks of the claimant's disability. At the time relevant to this appeal, the relevant portions of § 31-349 provided that "[t]he employer . . . shall in the first instance pay all awards of compensation and all medical expenses . . . for the first one hundred four weeks of disability. As a condition precedent to the liability of the second injury fund, the employer . . . must, ninety days prior to the expiration of the *one-hundred-four-week period,* notify the custodian of the second injury fund of the pending case . . . ." (Emphasis added.) See footnote 1.

The defendants contend that the "one-hundred-four-week period" in the notice provision of § 31-349 does not refer to the first one hundred four weeks of the claimant's disability, but rather to the first one hundred four weeks of unreimbursed payments made by the employer to the claimant, that is, the amount of time it takes for the employer to pay out-of-pocket benefits equal to one hundred four weeks. Under this interpretation, the defendants argue, the $7000 recovery from the malpractice settlement extended the notice

period by twenty-three weeks[8] because the employer in effect did not begin making out-of-pocket payments until August 6, 1982. Therefore, according to the defendants, the February 15, 1984 notice to the Fund was timely[9] and the commissioner improperly dismissed their request to transfer the claim to the Fund.

The Fund argues that the correct construction of the notice provision of § 31-349 is that, for the notice to be timely, the employer or insurer must give notice of transfer to the Fund ninety days prior to the expiration of the first one hundred four weeks of the claimant's disability. The Fund contends that the plain reading of the statute as a whole and the purpose of the notice requirement support its construction of the meaning of the "one-hundred-four-week period." Moreover, the Fund argues that any uncertainty regarding the legislative intent behind the statutory notice provision was clarified by a 1991 technical amendment to the act. Public Acts 1991, No. 91-32, §§ 35, 41. We agree with the Fund's interpretation of the notice provision of § 31-349.

" 'In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature.' *United Illuminating Co.* v. *Groppo,* 220 Conn. 749, 755, 601 A.2d 1005 (1992). '[W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent.' *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 193, 530 A.2d 171 (1987). We have acknowledged, however, in

---

[8] Pursuant to General Statutes § 31-306 et seq., workers' compensation benefits are paid in terms of weekly benefits. The claimant's basic compensation rate was $298.29, making the $7000 recovery sufficient to cover 23.5 weeks of benefits.

[9] If the "one-hundred-four-week period" did not begin until August 6, 1982, the notice due ninety days prior to the expiration of this period would have been due no later than May 4, 1984.

the context of workers' compensation legislation, that '[s]uch guidance is often of little help . . . since words seldom have precise and unvarying meanings.' *Jacques* v. *H.O. Penn Machinery Co.,* 166 Conn. 352, 359 n.3, 349 A.2d 847 (1974)." *Weinberg* v. *ARA Vending Co.,* 223 Conn. 336, 340–41, 612 A.2d 1203 (1992).

"When the language of a statute is unclear, we may ascertain the intent of the legislature by looking beyond the language to the statute's legislative history and the purpose that the statute was intended to serve." Id., 341. We have previously recognized that our construction of the Workers' Compensation Act should make " 'every part operative and harmonious with every other part insofar as is possible . . . .' " *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 104, 491 A.2d 368 (1985). In applying these principles, we are mindful that the legislature is presumed to have intended a just and rational result. *Sanzone* v. *Board of Police Commissioners,* 219 Conn. 179, 187, 592 A.2d 912 (1991).

It is an axiom of statutory construction that legislative intent is to be determined by an analysis of the language actually used in the legislation. *Caltabiano* v. *Planning & Zoning Commission,* 211 Conn. 662, 666, 560 A.2d 975 (1989). Reading the notice provision of § 31-349 as a whole, we are led to the conclusion that the legislature intended the "one-hundred-four-week period" to refer to the first one hundred four weeks of the claimant's disability. The sentence immediately preceding the notice provision states that the employer shall pay all awards of compensation for "the first one hundred four weeks of disability." The subsequent reference to "one-hundred-four-week period" logically can refer only to its antecedent; the weeks of the claimant's disability. We note that other courts have already applied this commonsense reading of § 31-349; *Kiernan* v. *Roadway Express, Inc.,* 15 Conn. App. 625, 628–29, 545 A.2d 1158, cert. denied, 210 Conn. 801,

553 A.2d 615 (1988); *Kramer* v. *General Electric Co.,* 37 Conn. Sup. 742, 745, 436 A.2d 50 (1981); and we conclude that any other interpretation would require a strained reading of the statute.

Moreover, our interpretation of § 31-349 is consistent with the purposes of the notice provision. "The object of the ninety-day statutory notice is to enable the fund to be apprised promptly of such a claim being made, to obtain a copy of the agreement or award and to have immediate access to all medical reports. Such information is essential to enable the fund to assess promptly its alleged liability and to establish immediately its financial reserves. A further objective is to give the fund a reasonable period of time within which to investigate the claim and to prepare to meet it." *Plesz* v. *United Technologies Corporation,* 174 Conn. 181, 188, 384 A.2d 363 (1978).

To accept the defendants' interpretation of § 31-349 would frustrate this purpose. The time for notice in relation to the claimant's disability would vary from case to case, depending on the size of the employer's recovery, if any, in third party suits brought by claimants. The Fund would never be able to ascertain with any certainty its liability at the time notice was given, as timeliness of the notice could not be determined until potentially years later, when third party litigation was concluded.[10] We conclude that the running of the notice

[10] The facts of this case provide an excellent example of the uncertainty that would result from the defendants' interpretation of General Statutes (Rev. to 1983) § 31-349. Here, the third party malpractice suit was settled over five years after the defendants gave notice to the Fund. The purpose of enabling the Fund to set reserves and investigate claims is surely frustrated when it cannot determine the timeliness of a notice until years after it is received.

The defendants argue that our interpretation of the notice provision could lead to an absurd result. They offer the example of occupational diseases, and the three year period of limitation for an employee's notification to his employer of a claim under General Statutes (Rev. to 1983) § 31-294.

period from the time of the claimant's disability advances the purpose of the provision and provides the uniformity intended by any period of limitation.

Finally, we find the legislative intent as expressed in a 1991 amendment to the notice provision controlling. "We have previously considered subsequent enactments in order to illuminate the legislature's intent with respect to prior legislative action." *Weinberg* v. *ARA Vending Co.*, supra, 344–45; *AirKaman, Inc.* v. *Groppo*, 221 Conn. 751, 761, 607 A.2d 410 (1992). Number 91-32, § 35 of the 1991 Public Acts amended the portion of § 31-349 at issue in this case to read: "As a condition precedent to the liability of the second injury fund, the employer . . . shall, ninety days before the expiration of the first *one hundred four weeks of disability,* notify the custodian of the second injury fund of the pending case." (Emphasis added.) The substitution of "one hundred four weeks of disability" for "one-hundred-four-week period" specifically addresses the ambiguity raised by the defendants. Thus, unless the 1991 amendment reflects a substantive change in the law, the only logical conclusion this court may draw is that the phrase "one-hundred-four-week period" refers to the first one hundred four weeks of the claimant's disability, not to the number of weeks the claimant's employer has paid out-of-pocket benefits. Cf. *Hernandez* v. *Gerber Group,* 222 Conn. 78, 82, 608 A.2d 87 (1992).

This court has previously examined the legislative history of No. 91-32 of the 1991 Public Acts and determined that "it was intended to be a technical

---

The defendants argue that theoretically the time period for transferring the claim under § 31-349 could run before the employer ever receives notice of the existence of that claim. We note that our decision today is narrow, and does not address issues not yet before this court. We suggest, however, that further construction of the notice provision, when and if it becomes necessary, would not require a type of notice that is impossible to give.

amendment." *Weinberg* v. *ARA Vending Co.,* supra, 346. Comments made on the bill on both the Senate and House floor and during a hearing of the joint standing committee make clear that the purpose of the bill was to make only minor, technical changes to the existing law. Id., 346–47.[11] It is therefore manifest that the substitution of "one hundred four weeks of disability" for "one-hundred-four-week period" in the 1991 amendment merely clarified the meaning of the one hundred four week period as it had originally been intended and did not introduce a substantive change in the law.

We conclude that the "one-hundred-four-week period" of the notice provision of § 31-349 refers to the first one hundred four weeks of the claimant's disability. The defendants' February 15, 1984 notice to the Fund failed to notify the Fund ninety days prior to the expiration of this term. The compensation review division therefore properly affirmed the commissioner's decision that the defendants' notice was untimely and therefore dismissal of the defendants' request to transfer the claim was proper.

## II

The defendants also claim that, even if we interpret the "one-hundred-four-week period" under § 31-349 to refer to the one hundred four week period from the claimant's disability, the transfer of the claim to the

[11] For example, during the public hearings before the committee on labor and public employees, Senator James H. Maloney, presiding chairman, introduced the impending discussions about the bill with the following: "The bill that we are going to hear today is a *technical* revision in affect to the existing statute. *It doesn't change substantive law,* or if it does we want to hear about it." The first speaker, then workers' compensation commission chairman, John A. Arcudi, next stated: "So that, this is the purpose of the bill, *not to change substance, but to try to simplify language and eliminate archaic language, reduce language if possible,* that's been the attempt . . . ." (Emphasis added.) Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 1, 1991 Sess., pp. 16–17.

Fund should not automatically have been barred because the Fund did not suffer any prejudice due to the untimely notice. The defendants argue that since the delayed notice did not frustrate the purposes of the notice of transfer provision, the compensation review division improperly affirmed the commissioner's dismissal of the defendants' request to transfer the claim to the Fund. We disagree.

Whether the failure to notify the Fund in accordance with the mandates of § 31-349 requires barring transfer of the claim merits little discussion.[12] The notice requirement of § 31-349 states: "*As a condition precedent* to the liability of the second injury fund, the employer . . . must . . . notify the custodian of the second injury fund of the pending case." This court has consistently stated that "[i]f the language of the statute is clear and unambiguous, it is assumed that the words themselves express the intention of the legislature and there is no room for judicial construction." *Johnson* v. *Manson,* 196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986); see also *Rose* v. *Freedom of Information Commission,* 221 Conn. 217, 602 A.2d 1019 (1992); *Winslow* v. *Lewis-Shepard, Inc.,* 216 Conn. 533, 538, 582 A.2d 1174 (1990). Furthermore, in the context of this and other provisions of the Workers' Compensation Act, Connecticut courts have stated that notice provisions under the act should be strictly construed. *Walsh* v. *Waldron & Sons,* 112 Conn. 579, 582–84, 153 A. 298 (1931); *Kiernan* v. *Roadway*

_____

[12] Indeed, the defendants also appeared to recognize the novelty of their argument. In oral argument the defendants stated in rebuttal that "[r]egarding prejudice by the lack of notice, the trial brief of the attorney general's office stated that there was no prejudice and that issue was immaterial. That wasn't raised below and I believe that's a correct statement." We reach this issue, however, because it is unclear whether the defendants intended to abandon this argument by their statement.

*Express, Inc.,* supra, 630; *Misiurka* v. *Maple Hill Farms, Inc.,* 15 Conn. App. 381, 384, 544 A.2d 673, cert. denied, 209 Conn. 813, 550 A.2d 1083 (1988).

Timely notice is specifically required *as a condition precedent* to the transfer of liability to the Fund. This statutory hurdle to a transfer of liability to the Fund leaves little to either interpretation or imagination. Indeed, this same argument was specifically rejected by the Appellate Court; *Kiernan* v. *Roadway Express, Inc.,* supra, 631; and we find no basis for an alternative construction. See also *Plesz* v. *United Technologies Corporation,* supra, 188 (court rejects argument that failure to comply with statutory notice of § 31-349 merely postpones Fund's obligation until proper notice is actually given).

We conclude that the giving of timely notice is *the* condition precedent to an effective transfer of liability to the Fund under § 31-349. Had the legislature intended to include a provision regarding the showing of prejudice, it could easily have done so.[13] We are not permitted to supply statutory language that the legislature may have chosen to omit. *Colli* v. *Real Estate Commission,* 169 Conn. 445, 452, 364 A.2d 167 (1975). The compensation review division properly sustained the commissioner's dismissal of the defendants' request to transfer the claim to the Fund for failure of timely notice.

The decision of the compensation review division is affirmed.

In this opinion the other justices concurred.

---

[13] For instance, General Statutes (Rev. to 1983) § 31-294 governs an employee's obligation to notify his employer of any injury sustained in the course of his employment. The statute provides, if the employee fails to give such notice, that "the commissioner may reduce the award of compensation proportionately to any prejudice which he finds the employer has sustained by reason of such failure . . . ."