LUIS DOS SANTOS *v.* F. D. RICH CONSTRUCTION COMPANY, INC., ET AL.
(15082)

CALLAHAN, BERDON, NORCOTT, KATZ and PALMER, Js.

Argued February 10—decision released May 9, 1995

*Richard G. Kascak, Jr.,* with whom, on the brief, was *Serge G. Mihaly,* for the appellants (named defendant et al.).

*Ernie R. Walker,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellee (defendant Second Injury Fund).

KATZ, J. The dispositive issue in this appeal from the compensation review board (board) is the meaning of the term "agreement" within the notice requirement for the transfer of liability to the second injury fund (fund) pursuant to General Statutes (Rev. to 1985) § 31-349 of the Workers' Compensation Act (act).[1] The

---

[1] General Statutes (Rev. to 1985) § 31-349 provides in relevant part: "COM-PENSATION FOR SECOND DISABILITY. PAYMENT OF INSURANCE COVERAGE

defendants[2] F. D. Rich Construction Company, Inc. (Rich), and its workers' compensation insurer, United States Fidelity and Guaranty Company (Fidelity), appeal from the decision of the board affirming the decision of the workers' compensation commissioner (commissioner) that their agreement for compensation with the plaintiff, Luis Dos Santos, was defective notice under § 31-349 because it previously had neither been

FOR TOTALLY INCAPACITATED PERSONS. The fact that an employee has suffered previous disability, or received compensation therefor, shall not preclude him from compensation for a later injury, nor preclude compensation for death resulting therefrom. If an employee who has previously incurred, by accidental injury, disease or congenital causes, total or partial loss of, or loss of use of, one hand, one arm, one foot or one eye, or who has other permanent physical impairment, incurs a second disability by accident or disease arising out of and in the course of his employment, resulting in a permanent disability caused by both conditions which is materially and substantially greater than that which would have resulted from the second injury alone, he shall receive compensation for the entire amount of disability, including total disability . . . . The employer by whom the employee is employed at the time of the injury, or his insurance carrier, shall in the first instance pay all awards of compensation and all medical expenses provided by this chapter for the first one hundred four weeks of disability. As a condition precedent to the liability of the second injury fund, the employer or his insurance carrier must, ninety days prior to the expiration of the one-hundred-four-week period, notify the custodian of the second injury fund of the pending case and shall furnish to said custodian a copy of the agreement or award together with all information purporting to support his claim as to the liability of the second injury fund, and shall make available to the custodian all medical reports as the custodian shall desire. . . ."

We look to the statute in effect at the date of injury to determine the rights and obligations between the parties. See *Civardi* v. *Norwich*, 231 Conn. 287, 293 n.8, 649 A.2d 523 (1994); *Iacomacci* v. *Trumbull*, 209 Conn. 219, 222, 550 A.2d 640 (1988). This rule applies to the employer's right to transfer liability to the fund pursuant to § 31-349. See *Plesz* v. *United Technologies Corp.*, 174 Conn. 181, 186–87 and n.2, 384 A.2d 363 (1978).

[2] The fund was also a defendant in the administrative proceedings. For purposes of this opinion, however, references to the defendants are to F. D. Rich Construction Company, Inc., and United States Fidelity and Guaranty Company.

signed by Dos Santos nor been approved by the commissioner. We reverse the board's decision.[3]

The following facts are undisputed. On September 17, 1986, Dos Santos suffered injury to his chest, ribs and legs during the course of his employment with Rich. As a result of this injury, he has been totally disabled since September 18, 1986, and has received temporary total disability benefits from Rich pursuant to General Statutes (Rev. to 1985) § 31-307.[4] He also has received payment from Rich for his medical and hospital bills pursuant to General Statutes (Rev. to 1985) § 31-294.[5]

On May 25, 1988, Rich sent to Dos Santos a voluntary agreement that had been signed by Fidelity, but that did not bear Dos Santos' signature or a notation of the approval of the commissioner. See General Statutes (Rev. to 1985) § 31-296.[6] Dos Santos signed the voluntary agreement and returned it to Rich on June 28, 1988.

---

[3] Rich also claims that the board improperly affirmed the commissioner's determination that the second injury fund was not estopped from asserting lack of proper notice under § 31-349. In view of our determination of Rich's first claim, we do not address its estoppel claim.

[4] General Statutes (Rev. to 1985) § 31-307 provides in relevant part: "COMPENSATION FOR TOTAL INCAPACITY. If any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, there shall be paid to the injured employee a weekly compensation equal to sixty-six and two-thirds per cent of his average weekly earnings at the time of injury . . . ."

[5] General Statutes (Rev. to 1985) § 31-294 provides, inter alia, that "[t]he employer, as soon as he has knowledge of any such injury, shall provide a competent physician or surgeon to attend the injured employee and, in addition, shall furnish such medical and surgical aid or hospital or nursing service as such physician or surgeon deems reasonable or necessary."

[6] General Statutes (Rev. to 1985) § 31-296 provides in relevant part: "VOLUNTARY AGREEMENTS. If an employer and an injured employee, or in case of fatal injury his legal representative or dependent, at a date not earlier than the expiration of the waiting period, reach an agreement in regard to compensation, such agreement shall be submitted in writing to the commissioner by the employer with a statement of the time, place and nature of the injury upon which it is based; and, if such commissioner finds such agreement to conform to the provisions of this chapter in every regard, he shall so approve it. A copy of the agreement, with a statement of the

On that same day, May 25, 1988, the defendants mailed a certified letter with return receipt requested to the treasurer of the state of Connecticut to provide the fund with notice of their intent to transfer to the fund, pursuant to § 31-349, liability for Dos Santos' claim for workers' compensation benefits.[7] Along with this letter, the defendants included all records and documentation concerning Dos Santos' claim, including a copy of the voluntary agreement that had been signed by Fidelity, but that had neither been signed by Dos Santos nor been approved by the commissioner. The fund acknowledged receipt of this letter by correspondence dated May 27, 1988. The fund then mailed to the defendants a letter dated May 31, 1988, that again acknowledged the fund's receipt of the letter of May 25, 1988, and, further, advised the defendants that the information they had furnished was "complete and up to date." On July 11, 1988, the defendants mailed the fully executed voluntary agreement to the commissioner, and the commissioner approved it on July 14, 1988.

On August 24, 1988, the defendants sent to the fund a copy of the fully signed and approved voluntary agreement related to Dos Santos' claim. The defendants subsequently filed with the fund additional medical reports pertaining to Dos Santos' claim. On May 13, 1991, after contacts between the defendants and the fund pertaining to the transfer of Dos Santos' claim, the fund for-

commissioner's approval thereof, shall be delivered to each of the parties and thereafter it shall be as binding upon both parties as an award by the commissioner."

[7] Section 31-349 required an employer, as a precondition to the transfer of liability to the fund, to provide notice "ninety days prior to the expiration of the one-hundred-four-week period." In this case, because Dos Santos had been receiving benefits continuously since September 18, 1986, the statutory period ended on September 15, 1988, and ninety days prior to that date was June 18, 1988. Thus, this letter dated May 25, 1988, was within the required period of time.

mally advised the defendants that it would not accept transfer of Dos Santos' case because of late notice to the fund. Following a formal hearing before a workers' compensation commissioner on September 10, 1991, the commissioner agreed with the fund that the notice was defective because the defendants' "failure to file with the Fund within the prescribed period both the notice *and* [an] executed and approved Voluntary Agreement or [a] Finding and Award constituted a failure to comply with the requirements of Section 31-349." Further, the commissioner rejected the defendants' estoppel claim on the ground that they had failed to establish "that the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury."

The defendants then appealed that decision to the board pursuant to General Statutes § 31-301. Noting that § 31-349 is subject to strict interpretation and that § 31-296 requires voluntary agreements to be signed by the parties and approved by a commissioner, the board agreed with the commissioner's interpretation of § 31-349. The board also concluded that the commissioner had properly rejected the defendants' estoppel argument and, accordingly, affirmed the commissioner's finding. The defendants appealed the board's decision to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The defendants claim that the board incorrectly concluded that the notice provisions of § 31-349 are only satisfied by the filing of an agreement if such agreement previously had been signed by the parties, including the claimant, and approved by the commissioner. The defendants contend that the plain meaning of the

phrase "copy of the *agreement*" in § 31-349 requires only a copy of the agreement that, in fact, existed between the parties, not a fully signed and approved *"voluntary agreement"* pursuant to § 31-296. (Emphasis added). They also argue that their proffered interpretation is the most logical reading of that phrase in light of the purposes of § 31-349 and the remainder of the act's provisions. We agree with the defendants on all points.

"In construing any statute, we seek to ascertain and give effect to the apparent intent of the legislature. *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 755, 601 A.2d 1005 (1992)." (Internal quotation marks omitted.) *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 390, 618 A.2d 1340 (1993). "It is an axiom of statutory construction that legislative intent is to be determined by an analysis of the language actually used in the legislation. *Caltabiano* v. *Planning & Zoning Commission*, 211 Conn. 662, 666, 560 A.2d 975 (1989)." *Vaillancourt* v. *New Britain Machine/Litton*, supra, 391. "[W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987). We have acknowledged, however, in the context of workers' compensation legislation, that [s]uch guidance is often of little help . . . since words seldom have precise and unvarying meanings. *Jacques* v. *H. O. Penn Machinery Co.*, 166 Conn. 352, 359 n.3, 349 A.2d 847 (1974). *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 340–41, 612 A.2d 1203 (1992).

"When the language of a statute is unclear, we may ascertain the intent of the legislature by looking beyond the language to the statute's legislative history and the purpose that the statute was intended to serve. [*Weinberg* v. *ARA Vending Co.*, supra, 223 Conn.] 341. We have

previously recognized that our construction of the Workers' Compensation Act should make every part operative and harmonious with every other part insofar as is possible . . . . *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 104, 491 A.2d 368 (1985). In applying these principles, we are mindful that the legislature is presumed to have intended a just and rational result. *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 187, 592 A.2d 912 (1991)." (Internal quotation marks omitted.) *Vaillancourt* v. *New Britain Machine/Litton*, supra, 224 Conn. 390–91. Finally, although we ordinarily accord deference to the construction of the act by the commissioner and the board; see *Crochiere* v. *Board of Education*, 227 Conn. 333, 354, 630 A.2d 1027 (1993); we do not do so in this case because the meaning of "agreement" under § 31-349 is a question of law that previously has not been subject to judicial scrutiny. *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995).

Our primary focus, therefore, is on the express language of § 31-349. This section provides, inter alia, as follows: "As a condition precedent to the liability of the second injury fund, the employer or his insurance carrier must, ninety days prior to the expiration of the one-hundred-four-week period, notify the custodian of the second injury fund of the pending case and shall furnish to said custodian a copy of the agreement or award together with all information purporting to support his claim as to the liability of the second injury fund, and shall make available to the custodian all medical reports as the custodian shall desire." General Statutes (Rev. to 1985) § 31-349. The language is clear that, in addition to providing the fund with notice "of the pending case," the employer or insurer must provide the fund with a copy of either the agreement *or* the award.

In this case, it is undisputed that the defendants did not provide the fund with a copy of an award within the prescribed period. It is also uncontested, however, that Dos Santos has been receiving workers' compensation benefits since his injury in 1986 and that the defendants, within the statutory period, did provide the fund with a copy of an agreement that was subsequently signed by Dos Santos and approved by the commissioner. Thus, the resolution of this case depends upon whether the agreement of May 25, 1988, was an "agreement" within the meaning of § 31-349.

The defendants, quoting *Sage* v. *Wilcox*, 6 Conn. 81, 85 (1826), contend that the term "agreement" under § 31-349 clearly means "no more than *concord*; the union of two or more minds; or a concurrence of views and intention. . . . In short, every thing done or omitted, by the compact of two or more minds, is universally and familiarly called an agreement, by every one, who understands the use and meaning of language." (Emphasis in original.) On the basis of this premise, they argue that "[n]othing in this settled definition requires that an agreement be signed . . . ." Accordingly, they claim that, because Dos Santos unquestionably had been receiving compensation benefits pursuant to an agreement with Rich and Fidelity since September 18, 1986, the May 25, 1988 document did not need to be signed to qualify as an "agreement" within the meaning of § 31-349. Moreover, they claim that the plain meaning of "agreement" does not require the commissioner's prior approval.

The fund contends, on the other hand, that we should construe the term "agreement" under § 31-349 as equivalent to the phrase "voluntary agreement" under § 31-296. Emphasizing that "[t]he term voluntary agreement [under § 31-296] means a written agreement reflecting a meeting of the minds or the parties, and approved by a Commissioner if he 'finds such agree-

ment to conform to the provisions of this chapter in every regard,' " the fund argues that the defendants' unsigned and unapproved agreement therefore fails to qualify under § 31-349. Moreover, the fund argues that "[i]t is most reasonable that in requiring the employer, or its carrier, to submit certain documents in the alternative, that the choice provided by the conjunctive 'or' was for the providing of documents of equivalent binding value. The voluntary agreement, alternatively referred to as the 'agreement' in § 31-296 becomes the equivalent legally binding instrument as a Finding and Award only after all of the statutory requisites, including the commissioner's approval, have been met."

These arguments indicate that the fund does not dispute the defendants' contention that the plain and ordinary meaning of "agreement" requires neither the signatures of the parties nor the approval of the commissioner. Instead, apparently recognizing that the term "agreement" is not susceptible, in and of itself, to an interpretation that requires the present agreement to have the signatures of the parties or the formal approval of the commissioner, the fund substantially argues that the term "agreement" should be construed in light of the remainder of the act as requiring the formalities necessary for a "voluntary agreement" within the meaning of § 31-296. Consequently, we believe that the merits of the fund's arguments and the board's decision turn on the narrow question of whether the legislature intended the term "agreement" in § 31-349 to encompass the formalities demanded of a "voluntary agreement" under § 31-296.

Our analysis of the structure of the act and the purposes that it serves persuades us that the legislature did not intend the term "agreement" under § 31-349 to have a meaning identical to that of the term "voluntary agreement" as defined in § 31-296. First, we look to the legislature's use of the term "agreement" in

§ 31-349. We presume that the legislature had a purpose in inserting in § 31-349 the word "agreement" rather than the term "voluntary agreement." See *Kinney* v. *State*, 213 Conn. 54, 62, 566 A.2d 670 (1989), cert. denied, 498 U.S. 890, 111 S. Ct. 251, 112 L. Ed. 2d 209 (1990). That the legislature did not intend the term "agreement" to be a synonym for "voluntary agreement" is illustrated, for example, by the language of General Statutes (Rev. to 1985) § 31-303, which provides: "Payments agreed to under a voluntary agreement shall commence on or before the tenth day from the date of agreement. Payments due under an award shall commence on or before the tenth day from the date of such award." If, as argued by the fund, the term "agreement" in the act was intended *always* to have the exact meaning of "voluntary agreement," then the legislature likely would have used the term "agreement" consistently throughout the act and would have had no need to use the specific term "voluntary agreement" in § 31-303 or any other provision.

Also, a 1989 amendment to § 31-303 illustrates that the legislature knows how to require formalities in connection with an "agreement," such as those required of a "voluntary agreement" under § 31-296, when it wants to do so. In No. 89-70 of the 1989 Public Acts, the legislature added a provision that "[p]ayments due from the Second Injury Fund shall be payable on or before the tenth business day after receipt of a *fully executed agreement*." (Emphasis added.) Again, if the term "agreement" already required the formalities of signatures and a commissioner's approval, then the legislature would have had no need to use the modifier "fully executed." Thus, although we acknowledge that relevant statutes should be interpreted consistently because "the legislature is presumed to have created a consistent body of law"; *BayBank Connecticut, N.A.* v. *Thumlert*, 222 Conn. 784, 790, 610 A.2d 658 (1992);

we cannot presume, as urged by the fund, that the terms "agreement" and "voluntary agreement" are interchangeable synonyms regardless of the context within which they appear.

We are also unpersuaded by the fund's argument that the conjunction "or" between the phrase "the copy of the agreement" and the term "award" indicates the legislature's intent to give the two terms equivalent meanings. Although such a conjunction may indicate the legislature's intent, in this case that intent, without further contextual support, is unclear. Indeed, although the fund argues that the conjunction indicates their equivalence, the appellants assert an equally plausible interpretation that, because § 31-296 gives "voluntary agreements" the practical effect of "awards," the legislature must have intended "agreement" in § 31-349 to mean something other than "voluntary agreement" or it simply would have used only the term "award" to cover both awards and "voluntary agreements." We decline to give weight to such an ambiguous grammatical distinction.

Second, we disagree with the fund that our interpretation somehow conflicts with the purposes underlying the creation of the fund and the purposes served by the notice requirement. "[I]n 1945, the legislature established the fund, primarily to encourage the employment of persons with an existing disability and, at the same time, to provide adequate workers' compensation benefits for them. *Civardi* v. *Norwich*, supra, 231 Conn. 293; *Hernandez* v. *Gerber Group*, 222 Conn. 78, 82, 608 A.2d 87 (1992); *Jacques* v. *H. O. Penn Machinery Co.*, supra, 166 Conn. 355. Additionally, by creating the fund, the legislature intended to relieve employers from the hardship of liability for those consequences of compensable injury not attributable to their employment . . . *Civardi* v. *Norwich*, supra, 293, quoting *Hernandez* v. *Gerber Group*, supra, 82;

*Plesz* v. *United Technologies Corp.*, 174 Conn. 181, 185, 384 A.2d 363 (1978); *Jacques* v. *H. O. Penn Machinery Co.*, supra, 356; 2 A. Larson, Workmen's Compensation Law (1994) § 59.31 (a), p. 10-492.399 and § 59.34 (a) (1), p. 10-528 . . . ." (Internal quotation marks omitted.) *Davis* v. *Norwich*, supra, 232 Conn. 320.

"The object of the ninety-day statutory notice is to enable the fund to be apprised promptly of such a claim being made, to obtain a copy of the agreement or award and to have immediate access to all medical reports. Such information is essential to enable the fund to assess promptly its alleged liability and to establish immediately its financial reserves. A further objective is to give the fund a reasonable period of time within which to investigate the claim and to prepare to meet it. *Vaillancourt* v. *New Britain Machine/Litton*, [supra, 224 Conn. 392] (construing notice requirements of § 31-349 to require strict compliance), quoting *Plesz* v. *United Technologies Corp.*, supra, 174 Conn. 188." (Internal quotation marks omitted.) *Davis* v. *Norwich*, supra, 232 Conn. 321. Our interpretation in no way frustrates the purposes of the notice requirements under § 31-349. Under our construction of the statute, in order properly to notify the fund an employer must at least submit a copy of the actual agreement between the parties, along with medical and other documentation, as required by § 31-349. These documents will, at a minimum, provide the fund with timely notice of the financial agreement reached between the parties, the nature of the employee's claim and other medical information necessary for the fund to determine its liability. In other words, the fund is in no worse position to evaluate the proposed transfer of a particular case merely because it must look to a valid, yet unsigned and unapproved, agreement between the parties.

At the same time, our interpretation properly fulfills the reasonable expectations of employers that have hired employees with previous disabilities. These employers may hire particular employees based on their ability to look to the fund in the event of a second injury. Thus, although we note that payment from the fund " 'should be made only in accordance with express statutory authority' "; id., 324; *Civardi* v. *Norwich*, supra, 231 Conn. 294; we conclude that the fund's "interpretation would require a strained reading of the statute." *Vaillancourt* v. *New Britain Machine/Litton*, supra, 224 Conn. 392.

In sum, we conclude that a document qualifies as a copy of the "agreement" under § 31-349 if it fairly reflects the material terms of the actual arrangement for workers' compensation benefits to which the employer (or its insurer) and the employee have assented. We agree with the defendants that the plain meaning of "agreement" under § 31-349 requires no more. Further, contrary to the fund's position, we believe that consideration of the placement and use of the word "agreement" in the act reinforces, rather than undermines, our interpretation. Accordingly, we agree with the defendants that where, as here, "the employer/insurer unilaterally agree to pay compensation, do pay compensation, and the employee accepts those payments, there is a binding agreement [within the meaning of § 31-349] without the employee's signature or the commissioner's approval." See *Adzima* v. *UAC/Norden Division*, 177 Conn. 107, 112 n.4, 411 A.2d 924 (1979). Because the defendants delivered a copy of their actual agreement with Dos Santos to the fund within the applicable period of time, this notice was timely. Consequently, the board, relying on its determination that notice was untimely and defective, incorrectly affirmed the commissioner's denial of the defendants' claim for transfer of liability.

The decision of the compensation review board is reversed and the case is remanded to the board with direction to remand the case to the commissioner with direction to grant the defendants' claim for transfer.

In this opinion the other justices concurred.