[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This administrative appeal concerns the applicability of certain state licensing requirements to employees of regulated gas utility companies who perform repair and maintenance work on gas-fired appliances for customers of the gas utility companies. The appellants are Connecticut Natural Gas Corporation, the Southern Connecticut Gas Company, and Yankee Gas Services Company ("gas companies"). They appeal from a declaratory ruling of the state of Connecticut Heating, Piping and Cooling Work Examining CT Page 6855 Board and the Plumbing and Piping Work Examining Board ("boards") made upon a request for a declaratory ruling by the Connecticut Heating and Cooling Contractors Association, Inc. ("association".)
The State of Connecticut Department of Consumer Protection is also named as a respondent, having referred the association's request for a declaratory ruling to the boards.
The Department of Public Utility Control ("DPUC") intervened in the administrative proceedings of the boards pursuant to General Statutes § 4-177a but is not a party to this appeal.
The United Steelworkers of America, which represents affected gas company employees, was granted amicus curiae status by the court, Maloney, J.
Aggrievement has been admitted and is found by the court to have been established.
History of the Proceedings
By a petition dated June 30, 1994, the Connecticut Heating and Cooling Contractors Association requested that the Commissioner of Consumer Protection for the State of Connecticut issue a declaratory ruling that employees of the gas companies who perform service, repair and maintenance of gas-powered appliances in the homes of gas company customers are subject to the licensing requirements of Chapter 393 of the General Statutes. In its request for a declaratory ruling, the association specifically indicated that it was not requesting a ruling as to whether the employees through whom the gas companies respond to emergency calls, such as reports of leaking gas or loss of gas pressure, must comply with the licensing requirements (Record Doc. 1, p. 2).
Advising the association that the responsibility for implementing Chapter 393 is delegated by statute to the respondent boards, the Commissioner forwarded the request for a declaratory ruling to those boards, which jointly held a hearing on September 21, 1994. The gas companies requested and were granted status as parties; and the DPUC requested and was granted status as an intervenor in that proceeding.
At the hearing, the association and the gas companies presented testimony and exhibits. The boards issued their declaratory ruling on January 30, 1995. The gas companies took a CT Page 6856 timely appeal pursuant to General Statutes §§ 4-176(h) and 4-183. Upon the application of the gas companies, the boards granted a stay of their declaratory ruling until June 30, 1995.
The declaratory ruling of the board is that "repair and maintenance work done on the consumer side of the [gas] meter constitutes an intrusion into the field of work which calls for licensing." The boards further observed that "[j]ust because a service is done by a public utility company does not necessarily make that service a public utility service within the meaning of Section 20-340 (2)." The boards summarized their conclusion as follows:
 To summarize, the work in question requires a license because it is not public Utility service, and because the Gas Companies are not regulated by DPUC.
(Record, Document #58).
Issues
The gas companies allege in their appeal that the boards' decision should be overruled and that their appeal should be sustained because the decision "is in violation of statutory provisions, was made upon unlawful procedure, is clearly erroneous in view of the reliable, probative and substantial evidence on the whole record, is arbitrary and capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion or is affected by other errors of law. . . ."
The gas companies identify the claimed errors of law as
a. failure to hold that the services at issue are exempt from licensing requirements pursuant to General Statutes § 20-340(2);
b. failure to find that the DPUC regulates the gas companies' operations;
c. disregard of the relevant facts and circumstances;
d. the boards were biased and not impartial;
e. the boards departed from the precedent of not requiring CT Page 6857 licensure.
At oral argument the gas companies did not seek to make any evidentiary showing with regard to their claims that the administrative adjudicators were biased or that they proceeded according to any illegal procedure. The court will therefore treat these grounds for appeal as having been abandoned.
The essence of the gas companies' claim of error is that the activities in question are exempt from licensing requirements because of a statutory exemption and that the boards failed to give effect to that exemption.
The boards made the following findings:
1. The Gas Companies are public service companies as defined in Section 16-1(4), Connecticut General Statutes.
2. For an indeterminate number of years, employees of the Gas Companies have been and presently are offering to perform and are performing various types of heating and cooling and plumbing and piping work on the customer side of the meter on the premises of their customers.
3. The work performed by these employees falls within the definitions of heating and cooling and plumbing and piping work in Section 20-330.
4. These employees, except for a scattered few, did not and do not hold licenses issued by the Heating, Piping and Cooling Board or the Plumbing and Piping Board to do such work.
5. These employees go through training programs provided by the Gas Companies, but these training programs are not regulated by DPUC or overseen regularly by anyone other than the Gas Companies.
6. No authority has been cited whereby DPUC requires such training programs.
7. The Gas Companies offer service contracts to their customers for the work in question, but these contracts are not regulated by DPUC. CT Page 6858
8. The rates charged for these service contracts are reviewed but not regulated by DPUC.
9. The public utility service of Gas Companies, whether or not they also manufacture the gas, is the transportation and distribution of gas to the consumers.
10. Ownership of the gas is transferred at the meter, thus this is where the Gas Companies' public utility service ends.
11. In 1967, the Legislature amended what is now Section 20-340(2), by adding, inter alia, the following: "only if the work performed is in connection with the rendition of public utility service. . . ."
12. The licensees doing the work in question are regulated by the two boards and not by DPUC.
13. The work in question is not regulated by DPUC.
14. The work in question is not public utility service work within the meaning of that term in Section 20-340(2).
Standard of Review
The scope of judicial review of the decisions of administrative boards or agencies is well established:
 Even as to questions of law, "[t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. (Citations omitted; internal quotation marks omitted; emphasis in original).
Perkins v. Freedom of Information Commission, 228 Conn. 158, 165
(1993), citing New Haven v. Freedom of Information Commission,205 Conn. 767, 774 (1988). CT Page 6859
The Connecticut Supreme Court has recently noted that while deference is appropriately given to an administrative agency's interpretation of a law that it is charged with enforcing, "it is for the court, and not for administrative agencies to expound and apply governing principles of law." Bridgeport Hospital v.Commission on Human Rights and Opportunities, 232 Conn. 91, 109
(1995). In the Bridgeport Hospital case the Supreme Court noted,232 Conn. 110, that it had "recently modified" the rule stated inStarr v. Commissioner of Environmental Protection, 226 Conn. 358,376 (1993). It characterized its discussion of deference in Starr
as limited to the principle that a trial court may "properly give deference to the agency charged with enforcement of a statute when there are two equally plausible interpretations of the statutory language". This standard of deference is difficult for a trial court to apply: deference is warranted if the agency's legal interpretation is "plausible" but is not, as in BridgeportHospital, to be accorded where the court finds the administrative authority's interpretation is not plausible, based on the court's own reading of the statute at issue. In Bridgeport Hospital, the CHRO had concluded that the phrase "affirmative action" authorized administrative awards of attorney's fees and damages for emotional distress. The Supreme Court stated "[b]ased upon our reading of the statute as stated earlier in this opinion, it is not plausible that the legislature intended the phrase `affirmative action' to include compensatory damages or attorney's fees," 232 Conn. 110.
The Supreme Court has further stated, with regard to the degree of deference that should be accorded to an administrative agency's interpretation of a statute, that an issue is particularly one for the reviewing court where the statute has not been previously subjected to judicial scrutiny or time-tested agency interpretations. West Hartford Interfaith Coalition, Inc. v. TownCouncil, 228 Conn. 498, 507 (1994); Quinnipiac Council, Boy Scoutsof America, Inc. v. Commission on Human Rights and Opportunities,204 Conn. 287, 295 (1987).
It is undisputed among the parties to this appeal that the' issue presented has not been decided by the boards previously either as to the gas companies or as to any other utility companies. The scope of the exemption set forth in General Statutes § 20-340(2) likewise does not appear to have been the subject of any judicial interpretations.
It therefore appears that the issue of the correctness of the CT Page 6860 boards' interpretation of § 20-340(2) should be reviewed by this court in accordance with general principles of statutory construction.
DISCUSSION
General Statutes § 20-331 created separate examining boards in the department of Consumer Protection for inter alia, (1) plumbing and piping work and (2) heating, piping and cooling work. "Plumbing and piping work" is defined in General Statutes § 20-330
(3) as including "the installation, repair, replacement, alteration or maintenance of gas . . . fixtures." "Heating, piping and cooling work" is defined in General Statutes §§ 20-330 (5) as including "the installation, repair, replacement, maintenance or alteration of any apparatus for piping, appliances, devices or accessories for heating systems," with certain exclusions not at issue in the case before this court.
General Statutes § 20-332 provides that the commissioner of consumer protection shall, with the advice and assistance of the examining board, determine the requirements for licensing of persons practicing in the areas of practice enumerated as being within the province of the examining boards.
General Statutes § 20-340 sets forth a number of exemptions to the licensing provisions of the rest of Chapter 393. The gas companies claim that one of these statutory exemptions, § 20-340(2), applies to the persons it employs to perform repair and maintenance work on gas-powered appliances and heating systems in the homes of customers who also receive gas from the gas companies. The text of the exemption relied upon is as follows:
 The provisions of this chapter shall not apply to . . . (2) employees of any public service company regulated by the state department of public utility control or of any corporate affiliate of any such company when the work performed by such affiliate is on behalf of a public service company, in either case only if the work performed is in connection with the rendition of public utility service or is in connection with the installation or maintenance of wire or telephone sets for single-line telephone service located inside the premises of a consumer. CT Page 6861
The occupational licensing scheme set forth in Chapter 393 was enacted to replace a variety of local licensing regulations with uniform statewide licensing requirements and enforcement. WhiteOak Corporation v. Department of Consumer Protection, 12 Conn. App. 251,256-57 (1987). The exemption on which the gas companies rely was first enacted in P.A. 1965 No. 493 § 9, Id. As originally enacted, the exemption applied to all work performed by employees of regulated utilities. In 1967, the General Assembly amended the statute to limit exemption to circumstances "if the work performed is in connection with the rendition of public utility service." In 1988, the General Assembly expanded the exemption of subsection (2) to include an exemption for the installation and maintenance of single-line telephone equipment.
The appellants have raised a number of arguments that are simply irrelevant to the determination as to whether the exemption from licensing applies to the activities at issue.
The first is the gas companies' claim that because they offer extensive training programs, there is no need for the further training and supervision that are engendered by being subject to general licensing requirements. The quality or the lack of quality of the present programs that the gas companies choose to provide to their employees does not determine the scope of a statute. While such facts might have been of interest to the General Assembly in determining whether and to what extent to exempt company employees from licensing requirements, it cannot supply a post hoc rationale for the legislation actually enacted.
Another irrelevant issue is the motivation of the association. This court's task is not to determine whether competition and service to customers will or will not be improved by requiring gas company employees who do maintenance and service work on gas appliances to be licensed like others who do the same work. The General Assembly was free to create an exemption even if that exemption had an adverse effect on competition. Conversely, the General Assembly was free to require licensing of gas company employees even if that requirement would have a negligible effect on the quality of services provided to consumers.
While the courts must "seek to ascertain and give effect to the apparent intent of the legislature;" West Hartford InterfaithCoalition, Inc. v. Town Council, 228 Conn. 498, 507 (1994), courts may not substitute their own ideas of what might have been a wise CT Page 6862 provision in place of what the legislature actually enacted.Barrett Builders v. Miller, 215 Conn. 316, 328 (1990); ManchesterSand Gravel Co. v. South Windsor, 203 Conn. 267, 276 n. 12 (1987);Sutton v. Lopes, 201 Conn. 115, 119 (1986). It is an axiom of statutory construction that legislative intent as to the meaning or scope of a statute is to be determined by an analysis of the language actually used in the legislation. Vaillancourt v. NewBritain Machine/Litton, 224 Conn. 382, 391 (1993); Caltabiano v.Planning Zoning Commission, 211 Conn. 662, 666 (1989). In construing any statute, the courts seek to ascertain and give affect to the apparent intent of the legislature. UnitedIlluminating Co. v. Groppo, 220 Conn. 749, 755 (1992).
In deciding whether the services at issue door do not require licensing, the court thus must determine the meaning of the text of § 20-340(2).
The words of § 20-340(2) clearly do not exempt from licensing requirements all work performed by gas company employees in the course of their employment. Rather, by the plain words of the statute, the exemption is applicable only "if the work performed is in connection with the rendition of public utility service." The issue is whether such tasks as repairing a gas clothes dryer or stove or performing periodic maintenance on a gas furnace are work performed "in connection with the rendition of public utility service." The gas companies argue to the effect that such service activities are performed "in connection with" the provision of gas to homes in that the appliances use gas and give rise to malfunctions that involve the gas supply. Citing various dictionaries, they urge that the phrase "in connection with" means "touching on" and that repair and maintenance of devices that use gas "touches on" the provision of gas to the customer.
Words and phrases in statutes are to be construed according to commonly approved usage of language Southington v. State Board ofLabor Relations, 210 Conn. 549, 561 (1989). Where a statute does not define a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries. Id.; Doev. Manson, 183 Conn. 183, 186 (1981). Courts must not, however, resort to broad dictionary meanings or borrow constructions from nonanalogous contexts but should construe the term at issue within the context of the particular context or regulatory scheme at issue. State v. Mattioli, 210 Conn. 573, 576 (1989) (courts should not apply "ordinary meaning" if context dictates otherwise). CT Page 6863
The gas companies' parsing of the qualifying clause of the exemption does not give effect to all of its words. The statutory exemption is not phrased as encompassing all services in connection with the customers' use of gas, but only with the "rendition of public utility service." The term "public utility service" is not defined in Title 16 of the General Statutes; however, "gas company" is defined at § 16-1(9) for purposes of that regulatory chapter of the General Statutes as including "every corporation . . . owning, leasing, maintaining, operating, managing or controlling mains, pipes or other fixtures, in public highways or streets, for the transmission or distribution of gas for sale for heat or power within this state." The definition of the public utility known as a gas company thus does not identify the provision of repair or maintenance service to gas appliances as a distinguishing feature that renders a business a gas company and hence a public utility. Rather, the distinguishing functions of a gas company that subject it to regulation are the transmission or distribution of gas through pipes for sale.
The gas companies argue that because their functions are generally regulated by the Department of Public Utilities Control (DPUC), they are not subject to further oversight by the licensing boards. In fact, the regulatory authority of the DPUC extends, pursuant to General Statutes § 16-11, only "in respect to their adequacy and suitability to accomplish the duties imposed upon such companies by law."
No statute imposes upon gas companies any duty to provide maintenance or service to the appliances that use the gas provided to customer's homes. The boards therefore have correctly concluded that such services are not "in connection with the rendition of public utility service" but that they are in connection with the provision of other kinds of services that are also performed by entities other than public utilities and are not therefore "public utility services." It can hardly be argued that independent plumbers who, for example, repair gas-fired hot water heaters are therefore engaged in the "rendition of public utility services" or that such services are in connection with such rendition.
If it is not the defined function of gas companies to repair gas appliances, this function is not properly characterized as "connected with" rendering the service that makes gas companies a "public utility service" rather than some other kind of service (such as an appliance repair service). To put it in other words, the functions that are "connected to" the work of a public utility CT Page 6864 are those necessary to perform statutory tasks, not ancillary activities that the gas companies are not required by law to perform.
The history of the evolution of the exemption at issue confirms the above construction of the language of the statute. As originally enacted in 1965, § 20-340(2) exempted all employees of public service companies from licensing requirements without any stated limitation. P.A. 65-493 § 9 provided in relevant part that "The provisions of this act shall not apply to . . . employees of public utilities regulated by the state public utility commission . . . ."
The limitation of the exemption to work performed "in connection with the rendition of public utility service" was added by P.A. 67-789 § 12. The parties agree that the legislative history contains no discussion of the gas companies' performance of the kinds of services at issue in this case; and the sponsor described the amendment as a "technical" amendment, that is, one not intended to change the meaning of the original enactment but only to clarify what the legislature intended in the original version. SeeVaillancourt v. New Britain Machine/Litton, 224 Conn. 393-94.
The gas companies argue that the exemption should be read more broadly because the quality of their performance is already regulated by the DPUC. In fact, pursuant to § 16-11, the DPUC's monitoring of public utilities extends only "in regard to their adequacy and suitability to accomplish the duties imposed upon such companies by law" and to safety issues. Issues of the quality of repair or maintenance work other than with respect to safety thus do not appear to be regulated, since the law does not require gas companies to perform such functions.
The respondents have brought to the court's attention an opinion the state's attorney general dated April 18, 1984, issued in respect to an inquiry whether certain telephone company employees remained exempt from licensing after massive charges in the law regarding the telecommunication industry. Then Attorney General Joseph Lieberman recognized that since the activities at issue were not activities regulated by the DPUC, the exemption did not apply. The activities at issue were described in the opinion letter as "the sale, installation and servicing of customer premises equipment."[1]
In 1988, in P.A. § 8-178, the General Assembly amended CT Page 6865 § 20-340(2) specifically to exempt "work in connection with the installation or maintenance of wire or telephone sets for single-line telephone service located inside the premises of a consumer." This amendment applies to activities by the telephone utilities similar to those that the gas company seeks to characterize as already being "in connection with the rendition of public utility service" If amendment was necessary to allow unlicensed telephone company employees to work on the appliances that use the service delivered through telephone wires, this court can hardly construe the exemption as already exempting the same kind of activities for other utilities. If servicing of the various kinds of appliances that use the delivered product of public utilities was already covered by the earlier wording of the exemption, this amendment would have been unnecessary.
The Connecticut Supreme Court has steadfastly ruled that exceptions to regulatory statutes are to be strictly construed.Daw's Critical Care Registry Inc. v. Dept. of Labor, 42 Conn. Sup. 376,389, aff'd 225 Conn. 99 (1993); Conservation Commission v.Price, 193 Conn. 414, 424 (1984); Aaron v. Conservation Commission,183 Conn. 532, 549 (1981); Kulis v. Moll, 172 Conn. 104, 110 (1976) and that those who claim the benefit of an exception under a statute have the burden of proving that they come within the limited class for whose benefit it was established. Aaron v.Conservation Commission, supra, citing Goodwin v. Giovenelli,117 Conn. 903, 107 (1933).
This court concludes that the boards plausibly and correctly determined that General Statutes § 20-340(2) does not exempt the services at issue from general licensing requirements.
Because the court has undertaken its own construction of the exemption statute, the legal reasoning of the boards in reaching their conclusion is not adopted in the approval of their determination., and it is therefore not necessary for this court to discuss the merit of the boards' implied interpretation that a utility is not "regulated by the state department of utility control" within the meaning of § 30-340(2) unless the DPUC actively
reviews each function within the statutory authority of the utility. This court agrees, however, that the particular services of repair and maintenance of gas-powered equipment defined in the association's request for a declaratory ruling are not exempt from the licensing requirements of Chapter 393.
The appeal is dismissed. CT Page 6866