[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULINGS ON POST VERDICT MOTIONS
On April 11, 1996, a jury rendered a verdict in favor of the plaintiff as to the only count of his complaint not stricken by the court, Martin, J. That sole surviving count was a claim brought pursuant to General Statutes § 13a-149, in which the plaintiff alleged that he had been injured by means of a defect in a roadway or sidewalk that the defendant Town of Wallingford had a duty to keep in repair.
At the charge conference, the court presented counsel for both parties with a proposed verdict form. The proposed form contained one line for economic damages and one line for noneconomic damages. Defendant's counsel objected to the proposed form, arguing that General Statutes § 52-572h provides for more than one line for damages on a verdict form only for negligence claims. Defense counsel took the position that a statutory claim arising under § 13a-149 was not subject to the requirements of § 52-572h(f) and that it would be error to include separate lines for awards of economic and noneconomic damages. Plaintiff's counsel took the position that he did not CT Page 4611 wish to create an issue for appeal and that he would acquiesce to defendant's request that the verdict form contain only one line for damages, not separate lines for economic and noneconomic damages.
The court revised the verdict form to included only one line for damages. On the record, both counsel agreed to the use of the revised form with respect to omission of separate awards for economic and noneconomic damages.
It is important to set forth the context in which the parties took the positions they did with respect to the text of the verdict form. The plaintiff claimed to have suffered a trimalleolar fracture of his ankle that required surgery and fixation with orthopedic hardware. Because he was suffering from cancer and had to undergo treatment for that condition at the same time his leg injury was being treated, the plaintiff's leg wounds did not heal well and he experienced complications that required intravenous antibiotics and other surgical treatment. The medical bills for treatment of the plaintiff's leg and other economic damages totalled approximately $200,000.
The jury returned a verdict in favor of the plaintiff in the amount of $700,000.
The following post-verdict motions have been filed:
1. Defendant's Motion to Set Aside the Verdict
2. Defendant's Motion for Collateral Source Hearing
3. Plaintiff's Motion to Add Prejudgment Interest
4. Defendant's Motion for 60 Day Extension Per Conn. Gen. Stat. § 52-225d.
The court will consider the various post-verdict motions in the order in which they are listed above.
I. Motion To Set Aside Verdict
The defendant has moved to set aside the verdict on a number of grounds. In its motion, it indicated that it was intending to add other unstated grounds that it might discover upon a review of the trial transcript. At oral argument, counsel for the CT Page 4612 defendant indicated that no additional grounds were being asserted in addition to those listed in the motion as originally filed. (The court therefore expresses no opinion as to the permissibility of this effort by the defendant to increase the amount of time available to assert grounds to set aside a verdict.)
With regard to the merits of the motion, this court finds that the defendant has not established any of its grounds. The notice provided to the town was not entirely accurate in every detail, however the jury was warranted in finding that it sufficiently complied with General Statutes § 13a-149 under the standards indicated in Pratt v. Old Saybrook, 225 Conn. 177
(1993).
The issue of constructive notice of the defective condition is one as to which the jury's conclusion is supported by sufficient evidence and reasonable inference. The evidence indicated that the location where the plaintiff fell was one prone to run off of water that froze and that there was ice on the area where the plaintiff fell for several hours before his fall. The jury was warranted in concluding that the icy condition was that of ice under newly falling snow and that the defendant had had several hours to discover that condition and remedy it.
The interrogatory to the jury to which the defendant objected, Interrogatory No. 4, was a shorthand reference to the more detailed and complex explanation in the charge to the jury of the issue of notice of the defect. The reference to that requirement in the interrogatory did not supersede the charge in any way; and the use of interrogatory, which reminded the jury of the plaintiff's duty to prove each element of his claim, is not a reason to set aside the verdict.
The remaining asserted grounds are complaints concerning rulings on the admissibility of evidence and exceptions to the charge that do not identify adequate reasons to set aside the verdict under the standard set forth in Palomba v. Gray,208 Conn. 21, 24-25 (1988) and Labatt v. Grunewald, 182 Conn. 236,240.
II. Motion for Collateral Source Hearing
Upon motion of the defendant, this court conducted a hearing for two purposes: 1) oral argument as to whether benefits received CT Page 4613 by the plaintiff from collateral sources should be deducted from the amount of the verdict, and 2) the taking of evidence as to the amount of such benefits received, premiums paid for such benefits, and the nature of the entity from which the benefits were received. Both parties were provided with a full opportunity to adduce any and all evidence relevant to their respective claims with regard to all issues concerning deduction of collateral source benefits.
The parties have stipulated that the amount of collateral source benefits, as defined in Gen. Stat. § 52-225b, received by the plaintiff is $191,065.97. The court also heard evidence as to the amount of premiums expended to secure such benefits; however the calculation to be made from that evidence is contested. The defendant takes the position that collateral source benefits should be deducted from the verdict before judgment is entered. The plaintiff objects for the reason that the defendant's insistence that no separate award of economic damages be made by the jury precludes application of § 52-225a.
Conn. Gen. Stat. § 52-225a provides in applicable part as follows:
 a) In any civil action, whether in tort or in contract, wherein the claimant seeks to recover damages resulting from (1) personal injury or wrongful death occurring on or after October 1, 1987 . . . and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h, by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section, except that there shall be no reduction for 1) a collateral source for which a right of subrogation exists. . . .
 b) Upon a finding of liability and an awarding of damages by the trier of fact and before the court enters judgment, the court shall receive evidence from the claimant and other appropriate persons concerning the total of collateral sources which CT Page 4614 have been paid for the benefit of the claimant as of the date the court enters judgment.
 c) The court shall receive evidence from the claimant and any other appropriate person concerning any amount which has been paid, contributed or forfeited, as of the date the court enters judgment, by or on behalf of, the claimant or members of his immediate family to secure his right to any collateral source benefit which he has received as a result of such injury or death.
[Emphasis supplied].
The plaintiff has objected to the requested reduction of the verdict on a number of grounds:
1. At the insistence of the defendant, there was no determination of "economic damages" and it is therefore not possible for the court to "reduce the amount of such award which represents economic damages," the only reduction authorized by § 52-225a(a). That statute does not authorize reduction of damages other than economic damages, and the lack of a specific finding as to the amount of economic damages awarded creates a risk that the reduction will be of noneconomic damages, a reduction not authorized by law.
2. In the alternative, the plaintiff takes the position that a right of subrogation exists and that a reduction is therefore specifically precluded by § 52-225a. Though § 52-225c
precludes recovery by subrogation or otherwise by insurers who have paid collateral source benefits to the plaintiff, the plaintiff claims that this bar is preempted by ERISA because the source of the benefit is an ERISA benefit plan. Accordingly, the plaintiff takes the position that because the payer of the collateral source benefit has a right of subrogation, no deduction should be made.
III. Applicability of § 52-225a
While the portion of the legislation known as Tort Reform II that is codified as § 52-572h is concerned with "negligence actions," § 52-225a contains no such limitation. Rather, the provision for deduction of collateral source benefits applies in CT Page 4615 "[a]ny civil action, whether in tort or contract, wherein the claimant seeks to recover damages resulting from (1) personal injury or death occurring on or after October 1, 1987 . . . and wherein liability . . . is determined by the trier of fact and damages are awarded to compensate claimant. . . ."
It is not contested that this action is 1) a civil action 2) for personal injury 3) occurring after October 1, 1987 4) in which the trier of fact determined liability, and 5) in which damages were awarded to compensate the claimant. These elements constitute the statutory definition of the situation to which the statute applies. The next clause of the same sentence does not concern the scope of the statute but rather the mechanics of what the court is to do in cases so defined: ". . . the court shall reduce the amount of such award which represents economic damages as defined in subsection (1) of subsection (a) of § 52-572h
[by the amount of the collateral source benefits]." The plaintiff construes § 52-225a as if it read "In any civil action . . . in which the trier of fact awards economic damages pursuant to § 52-572h(a). . . ." Such a construction would import into § 52-225a the limited scope of § 52-572h — that is, the apparent limitation to negligence actions. Such a construction cannot be made, however, because the plain words of § 52-225a
indicate that its scope is not limited to negligence actions but that it applies to "any civil action," as parsed above.
The scope of a statute is to be determined by reference to the language actually used in the legislation. Vaillancourt v.New Britain Machine/Litton, 224 Conn. 382, 391, 396 (1993);Caltabiano v. Planning Zoning Commission, 211 Conn. 662, 666
(1989); Local 218 Steamfitters Welfare Fund v. Cobra Pipe Supply Coil Co., 207 Conn. 639, 645 (1988); Schurman v. Schurman,188 Conn. 268, 273 (1982). Adjudicators may not substitute their own ideas of what might have been a wise provision by engrafting exceptions that the legislature did not actually enact, BarrettBuilders v. Miller, 215 Conn. 316, 328 (1990); Colli v. RealEstate Commission, 169 Conn. 445, 452 (1975), nor may they engraft language on to legislature, Zapata v. Burns, 207 Conn. 496,503-04 (1988). This court cannot, as the plaintiff urges, construe a provision applicable to all personal injury actions as if it were applicable only to actions based on a cause of action in negligence or only to actions in which the jury form used was as described in § 52-572h.
The plaintiff argues to the effect that even if the CT Page 4616 legislature provided for deduction of collateral source benefits in all personal injury suits arising after October 1, 1997, it provided that the deduction be done in a particular manner, that is, from the amount of the award "which represents economic damages" and that without an identification of such amount as a specific finding, it is not possible to comply with this provision. The plaintiff argues as if § 52-225a authorized reduction only from "the amount found by the trier of fact to represent economic damages as defined in subsection (1) of subsection (a) of § 52-572h." That is not the phrase used. Rather, § 52-225a not only authorizes but requires ("the court shall reduce the amount . . .") the reduction of "the amount of such award which represents economic damages."
While § 52-225 refers to the definition of economic damages in § 52-572h, it does not limit deduction to the amount found to be economic damages by the procedure set forth in that provision.
The position of the plaintiff is that because the trier of fact did not specify which portion of the award was for economic damages, this court cannot reduce by the amount of collateral source benefits to comply with § 52-225a. If the plaintiff had recovered an amount less than the amount of the economic damages claimed, such an argument might have validity. In such a situation, the court would not be able to determine what portion of an undifferentiated verdict represented recovery of economic damages and what part represented recovery of noneconomic damages.
In the case before the court, however, the verdict far exceeds the amount of the economic damages about which the plaintiff presented evidence. The plaintiff presented $213,921.25 in bills for medical services as economic losses he had incurred, and his counsel argued to the jury that the award should include that amount. The amount of the verdict, $700,000.00, cannot be logically said to be an amount that leads to uncertainty whether economic as well as noneconomic damages were awarded.
The Supreme Court has repeatedly ruled that statutes must be construed to give effect to the intended purpose of the legislature. Office of Consumer Counsel v. DPUC, 234 Conn. 624,642, 644 (1995); Dos Santos v. F. D. Rich Construction, Inc.,233 Conn. 14, 20 (1995); Vaillancourt v. New Britain Machine/Litton,224 Conn. 390. CT Page 4617
In construing any statute, courts must seek to ascertain and give effect to the apparent intent of the legislature. Dos Santosv. F. D. Rich Construction, Inc., 233 Conn. 20; UnitedIlluminating Co. v. Groppo, 220 Conn. 749, 755 (1992). When the language of a statute is plain and unambiguous, courts need look no further than the words themselves because it must be assumed that the language of the statute expresses the legislature's intent. American Universal Insurance Co. v. DelGreco, 205 Conn. 178,193 (1987). Where the language of the statute is unclear, it is appropriate to look beyond the language to the statutory history and the purpose the statute was intended to serve. DosSantos v. F. D. Rich Construction, Inc., 233 Conn. 20; Weinbergv. ARA Vending Co., 223 Conn. 336, 341 (1992).
General Statute § 52-225a(a) provides for deduction of collateral source benefits in any civil action to recover for personal injuries. The statute provides for a method of deducting such benefits that is ambiguous, because that method refers to awards of economic damages that are not, in fact, made separately in all cases. This court must determine the purpose and intent of the legislature in order to determine whether it should be given effect in all civil actions for personal injury or to the more limited universe of such cases in which an explicit finding of economic damages has been made.
The intent of the legislature in enacting § 52-225a was to abolish the collateral source rule, thereby precluding personal injury plaintiffs from recovering the same benefit twice: once from a collateral source, such as a health insurance plan, and again from the tortfeasor.
Where, as in this case, the verdict is so ample that it seems fair to conclude that it includes compensation for economic damages claimed, the legislative purpose of § 52-225a must be given effect by deducting the collateral source benefit from the verdict unless a statutory exception applies.
Exemption by reason of right to subrogation
The plaintiff claims that even if § 52-225a applies in the absence of an explicit jury finding as to the amount of economic damages, no deduction should be made for the collateral source benefits received because the health insurance contract under which the medical benefits were paid sets forth a right of CT Page 4618 subrogation in case of recovery against a tortfeasor. As is cited above, § 52-225a(a) precludes deduction of collateral source benefits "for which a right of subrogation exists." General Statutes § 52-225c, however, prohibits recovery by an "insurer or other person providing collateral source benefits" of collateral source benefits paid "unless otherwise provided by law."
The court finds that United States Life Insurance Company is an insurer and that it paid the plaintiff $191,065.97 in medical insurance benefits pursuant to the group insurance plan of which the plaintiff was an insured. Since § 52-225c precludes subrogation by the insurer, this finding should lead to the conclusion that no right of subrogation exists as to the collateral source benefits at issue and that therefore they are to be deducted from the verdict. The plaintiff asserts, however, that the prohibition against subrogation of insurance benefits set forth in § 52-225c cannot be given effect because the insurance plan that paid them is a plan subject to the requirements of the federal Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. and is preempted by ERISA. This federal statute provides that its provisions "shall supersede any and all state laws as they may now or hereafter relate to any employment benefit plan." 29 U.S.C. § 1144 (a). The United States Supreme Court has ruled that a state law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan". Shaw v. Delta Air Lines, Inc.,463 U.S. 85, 96-97 (1983). "ERISA preempts any state law that refers to or has a connection with covered benefit plans . . . `even if the law is not specifically designed to affect such plans, or the effect is only indirect . . ." and even if the law is consistent with ERISA's substantive requirements." [citations omitted]; New York State Conference of Blue Cross Blue ShieldPlans v. Travellers Ins. Co., 115 S.Ct. 1671, 131 L.Ed.2d 695
(1995).
The plaintiff acknowledges, however, that ERISA's preemption provision applies only to those "employee welfare benefit plans" that meet the definition of that term provided at 29 C.F.R. § 2510.3-1(j). That regulation states that the term (and thus, the preemption)
 shall not include a group or group type insurance program offered by an insurer to employees or members of an employee organization under which CT Page 4619 (1) no contributions are made by an employer or employee organization; (2) participation [in] the program is completely voluntary for employees or members; (3) the sole function of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and (4) the employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.
The parties adduced evidence relevant to the determination whether the medical benefits plan at issue is or is not a plan subject to ERISA and its preemption provisions. On the basis of that evidence, the court finds from February 8, 1994 to date that the plaintiff was employed at Pajor's Family Restaurant in Wallingford. The employer offered the medical benefit insurance plan of United States Life Insurance Company on a voluntary basis to employees who worked more than thirty hours. The restaurant did not pay for any benefits but only deducted the premiums from the pay of participating employees. All communications with regard to claims for benefits were conducted directly between the employees and United States Life Insurance Company.
While the plaintiff claimed in his brief that the employer "endorsed" the benefit program, he adduced no evidence to that effect.
This court concludes that the medical insurance plan that paid the collateral source benefits at issue was an outside insurance plan and not a plan funded by the employer. According to the definition supplied by the regulation and the interpretation of the federal courts, such a plan is not an ERISA plan. FMC Corp. v. Holliday, 498 U.S. 52 (1990). Insurance companies, unlike employers who directly furnish employee benefit plans, are not relieved from state statutes that regulate insurers. FMC Corp. v. Holliday, 498 U.S. 61.
General Statute § 52-225c prohibits insurers from enforcing policy terms allowing subrogation or other recovery of CT Page 4620 benefits paid to an insured in a personal injury judgment. Since the medical insurance plan at issue was not a plan subject to ERISA, § 52-225c is not preempted and is applicable. Consequently, there is no right to subrogation, and this claimed bar to a reduction of collateral source benefits is not applicable.
Amount of reduction
The parties are in agreement that the plaintiff received collateral source benefits in the amount of $191,065.97. They do not, however, agree on the proper calculation of the statutory exemption for deduction for amounts paid by the claimant to secure his right to those benefits. See § 52-225a(a) and (c).
On the basis of the evidence presented, the court finds that the plaintiff paid $930 per month in order to obtain the benefits at issue. His injury occurred on February 8, 1994. The plaintiff presented no evidence to establish the inception date of the policy in force on that date. By paying monthly payments from February 1, 1994 to December 1995, the date of his most recent medical care in connection with the injury, the plaintiff secured the benefits at issue. The court finds the amount of such offsettable premiums to be $21,390 (23 months x $930.00). The defendant adduced testimony to the effect that another employee of Pajor's Family Restaurant, a single male, paid only $130 per month for medical insurance. The defendant claims that the court should infer that the higher premium paid by the plaintiff reflects premiums for family coverage and does not constitute amounts "paid . . . to secure his right to any collateral source benefit which he has received" within the meaning of § 52-225a(c). This court has no basis from which to make an inference as to what portion of the plaintiff's actual premium was attributable to coverage for himself and what portion was applicable to his family. Since the plaintiff had a history of cancer that predated the injury at issue in this case, it may well be that his premium was affected by his prior health history. The court cannot fairly make the inference urged by the defendant that the portion of the premium applicable to the plaintiff individually would have been the same as his brother's. In the absence of reliable evidence as to the amount of the premium applicable to secure individual coverage, the court will apply the amount actually paid to obtain the coverage the plaintiff received, that is $21,380.00. CT Page 4621
Accordingly, the amount of $191,065.97 less $21,390.00, that is, $169,675.97, shall be deducted from the amount of the verdict, such that the amount to be recovered is $530,324.03.
Motion for Prejudgment Interest
The plaintiff points out in a motion for prejudgment interest that he filed an offer of judgment in the amount of $675,000 and the defendant failed to accept it. Because of the reduction of collateral source benefits, his recovery is not greater than the amount stated in the offer of judgment, and he is not eligible to receive prejudgment interest pursuant to General Statutes § 52%192a. Civiello v. Owens-Corning Fiberglass Corp., 208 Conn. 82,90 (1988).
Judgment
Judgment shall enter in favor of the plaintiff in the amount of $530,324.03 plus costs to be taxed upon a hearing by the court as to the disputed claims for costs.
Pursuant to General Statute § 52-225d(a), the parties shall have sixty days "to negotiate and consent to an agreement to be incorporated into an amended judgment to provide for the payment of all such damages remaining in excess of two hundred thousand dollars in a lump sum or in periodic instalment payments or in combination thereof. . . ."