PAOLO SOARES *v.* MAX SERVICES, INC., ET AL.
(14663)

Dupont, C. J., and Spear and Healey, Js.

Argued January 22—officially released July 16, 1996

*Joseph A. La Bella,* for the appellant (named defendant et al.).

*Loida John-Nicholson,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellee (second injury fund).

HEALEY, J. On October 3, 1989, the plaintiff, Paolo Soares, suffered a back injury that arose out of and in the course of his employment by the defendant, Max Services, Inc. Max Services, Inc., had, theretofore, insured its potential liability under the Workers' Compensation Act (act), General Statutes § 31-275 et seq., with the defendant Commercial Union Insurance Companies. The plaintiff had suffered a prior injury that

was compensable under the act, as a result of which his disability from the October 3, 1989 injury was materially and substantially greater than would have resulted from his second injury alone. See General Statutes (Rev. to 1989) § 31-349 (a).[1]

---

[1] General Statutes (Rev. to 1989) § 31-349 provides in pertinent part: "Compensation for second disability. Payment of insurance coverage. (a) The fact that an employee has suffered previous disability, or received compensation therefor, shall not preclude him from compensation for a later injury, nor preclude compensation for death resulting therefrom. If an employee who has previously incurred, by accidental injury, disease or congenital causes, total or partial loss of, or loss of use of, one hand, one arm, one foot or one eye, or who has other permanent physical impairment, incurs a second disability by accident or disease arising out of and in the course of his employment, resulting in a permanent disability caused by both conditions which is materially and substantially greater than that which would have resulted from the second injury alone, he shall receive compensation for the entire amount of disability, including total disability, less any compensation benefits payable or paid with respect to the previous disability, and necessary medical care, as elsewhere provided in this chapter, notwithstanding the fact that part of such disability was due to prior accidental injury, disease or congenital causes. The employer by whom the employee is employed at the time of the injury, or his insurance carrier, shall in the first instance pay all awards of compensation and all medical expenses provided by this chapter for the first one hundred four weeks of disability. As a condition precedent to the liability of the second injury fund, the employer or his insurance carrier shall, ninety days prior to the expiration of the one-hundred-four-week period, notify the custodian of the second injury fund of the pending case and shall furnish to said custodian a copy of the agreement or award together with all information purporting to support his claim as to the liability of the second injury fund, and shall make available to the custodian all medical reports as the custodian shall desire. Failure on the part of the employer or the carrier to comply does not relieve the employer or carrier of its obligation to continue furnishing benefits under the provisions of this chapter. In the event the custodian shall reject the claim of the employer and its insurer, the question shall be submitted to the commissioner having jurisdiction, as promptly as possible, and the employer or carrier shall continue furnishing benefits until the outcome is finally decided, and if the employer or carrier prevails all payments made beyond the one-hundred-four-week period shall be reimbursed to the employer or carrier by the second injury fund. After the employer or its insurer has completed the payment for the one-hundred-four-week period, he shall file with the commissioner having jurisdiction, and with the custodian of the second injury fund, a form indicating that all compensation and medical bills have been paid for the one-hundred-four-week period, and indicating

Pursuant to § 31-349 (a), the defendants sought to transfer liability to the second injury fund (fund) effective at the end of the first 104 weeks of the plaintiff's disability. From the date of his second injury, the 104 week period ended on October 2, 1991. Ninety days prior to that date was July 5, 1991.

On November 29, 1990, the defendants sent the fund a written notice of their intention to seek to transfer liability to the fund. Attached to that notice were documents supporting their claim. A copy of the voluntary agreement as to benefits payable to the plaintiff was not furnished by the defendants to the fund before July 5, 1991. By letter dated December 4, 1990, the fund

thereon the date the custodian was notified of the pending case. Thereafter all responsibility for compensation and medical treatment shall be with the custodian of the second injury fund. If the subsequent injury of such an employee resulting from an accident arising out of and in the course of his employment shall result in the death of the employee, and it shall be determined that either the injury or death would not have occurred except for such preexisting permanent physical impairment, the employer or his insurance carrier shall, in the first instance, pay the funeral expense described in this chapter, and shall pay death benefits as may be due for the first one hundred four weeks. Ninety days prior to the expiration of the one-hundred-four-week period, the employer or his insurance carrier shall notify the custodian of the second injury fund of the pending case and shall furnish to said custodian a copy of the agreement or award. After the employer or its insurer has completed the payment for the one-hundred-four-week period, he shall file with the commissioner having jurisdiction, and with the custodian of the second injury fund, a form indicating that all compensation has been paid for the one-hundred-four-week period, and indicating thereon the date that the custodian was notified of the pending case. Thereafter all responsibility for compensation shall be with the custodian of the second injury fund. Employees shall not be denied any of the benefits provided by any provisions of this chapter by reason of the execution of an acknowledgment of physical defect, but the benefits specified in this chapter which would be payable except for the execution of such acknowledgement shall be paid entirely out of the second injury fund. Claims for such benefits shall be filed with the commissioner, who shall refer such claims to the custodian of the second injury fund as specified above. The custodian of the second injury fund may make payment by way of final settlement in any matter concerning the fund, subject to the approval of the commissioner, when it is for the best interests of the injured employee. . . ."

acknowledged receipt of the defendants' November 29, 1990 letter of notice. The fund indicated, however, that this notice was incomplete because it "lack[ed] necessary approved voluntary agreement or award . . . lack[ed] current medical information (less than three months old) and lack[ed] social security number."

Thereafter, by letter dated January 18, 1991, the fund wrote to the defendants' attorney, indicating that the defendants' notice to the fund was incomplete because it "lack[ed] current medical information (less than three months old)" and that it "lack[ed] necessary approved voluntary agreement or award." By letter dated March 7, 1991,[2] the fund wrote to the defendants' attorney, indicating that it had received from him "up-to-date medical information relating to the claim," but that the notice to the fund was still incomplete as of that date because it "lack[ed] necessary approved voluntary agreement or award."[3]

By March 18, 1991, the parties had signed the voluntary agreement. The workers' compensation commissioner (commissioner) approved that agreement on October 28, 1991. It was not, however, until February 10, 1992, that the defendants provided the fund with a copy of the approved voluntary agreement. February 10, 1992, was 219 days after the ninety day statutory period had expired.

On March 17, 1992, Yinxia Long, a paralegal specialist for the fund, wrote to the attorney for the defendants,

[2] The fund's letters of December 4, 1990, January 18, 1991, and March 7, 1991, each contained the following statement in bold type at the bottom: "Nothing in this letter is to be construed as an acceptance of the claim by the Fund on the merits or a concession that notice is timely."

[3] In their brief the defendants maintain that there were "several informal hearings," and notice of each was given to the fund, including those of June 11, 1990, and March 4, 1991. The defendants indicate that at those hearings they "agreed to the nature and amount of voluntary benefits which would be paid to Mrs. Soares." They acknowledge, however, that because these

stating: "This is a follow-up to our discussion of the case on February 10, 1992. The October 3, 1989, injury qualifies for transfer to the Fund. Please kindly forward transfer agreement and accounting for review." On July 22, 1992, the fund wrote to the attorney for the defendants, stating in part: "Per our telephone conversation of 6/14/92, I am returning the proposed transfer agreements in this matter. The Fund will not voluntarily accept transfer under § 31-349 as the voluntary agreement was not received by the Fund within the statutory period."[4] As indicated in that letter, the fund maintained that the 104th week of benefits ended on October 1, 1991, and the voluntary agreement was not approved until October 28, 1991. Pointing out that all parties had signed the voluntary agreement by March 18, 1991, the letter noted that the agreement could have been approved and sent to the fund within the statutory period.

The commissioner decided that the defendants, "having failed to follow the directives of the statute [§ 31-

hearings were informal, "there is no record of whether the Second Injury Fund was represented at, or participated in, the hearings."

[4] The fund's letter of July 22, 1992, stated in full:

"Re: Paulo Soares vs. Max Services

Dear Attorney LaBella:

Per our phone conversation of 6/14/92, I am returning the proposed transfer agreements in this matter. The fund will not voluntarily accept transfer under § 31-349 as the voluntary agreement was not received by the Fund within the statutory period.

C.G.S. § 31-349 states in part:

'As a condition precedent to the liability of the second injury fund, the employer or his insurance carrier shall, ninety days prior to the expiration of the one-hundred-four-week period, notify the custodian of the second injury fund of the pending case and shall furnish to said custodian a copy of the agreement or award. . . .'

According to the voluntary agreement, the 104th week of disability benefits expired on 10/1/91 and said voluntary agreement was not approved until 10/28/91. A further review of the voluntary agreement indicates all parties had signed the agreement by 3/18/91 and said agreement could have been approved and sent to the Fund within the statutory period.

349], cannot prevail in [their] attempt to transfer liability to the Fund." In doing so, he said: "It does appear that the claim *qualifies* for transfer, but the process of transfer requires that the statutory directives be observed. One of those directives requires the insurer to furnish to the Custodian of the Fund a copy of the (Voluntary) agreement." (Emphasis added.)[5] In concluding that the statute required that a copy of the voluntary agreement be provided to the fund ninety days prior to the expiration of the 104 week, the commissioner relied on *Kramer* v. *General Electric Co.*, 37 Conn. Sup. 742, 436 A.2d 50 (1981), a case decided by the Appellate Session of the Superior Court.

Thereafter, the defendants petitioned the compensation review board (board) for review of the decision of the commissioner. In that appeal, they claimed that the commissioner improperly (1) interpreted § 31-349 in finding that the defendants had failed to comply with the requirements of that statute and (2) failed to find that the fund had either waived its right to contest liability or had become estopped from denying liability.

The board affirmed the decision of the commissioner. In doing so, it held that the commissioner did not misinterpret the ninety day provision of § 31-349 (a) in requiring that a copy of the voluntary agreement be supplied to the custodian of the fund within that time limit. It relied on *Kramer* v. *General Electric Co.*, supra, 37 Conn. Sup. 742, which in turn had relied on *Plesz* v. *United Technologies Corp.*, 174 Conn. 181, 384 A.2d 363 (1978), as well as on two of its own recent decisions.[6]

---

Should you have any questions regarding this matter, I can be reached at . . . ."

[5] The commissioner's memorandum of decision states in part: "It is not disputed that the insurer did not furnish a copy of the Voluntary Agreement prior to 90 days before the expiration of the 104th week."

[6] *Reising* v. *General Dynamics/Electric Boat Division*, 13 Conn. Workers' Comp. Rev. Op. 40 (1994), and *Dos Santos* v. *F .D. Rich Construction Co.*, 12 Conn. Workers' Comp. Rev. Op. 64 (1994).

In support of its decision, the board quoted *Kramer* that the object of the ninety day statutory notice " 'is to enable the fund to assess its alleged liability quickly and thereby immediately establish its financial reserves, with a further objective being to give the fund reasonable time to investigate the claim and prepare to meet it.' " The board was not persuaded by the defendants' argument of the effect of legislative actions in 1969 and 1971 changing the "relevant wording of § 31-349." In addition, the board did not accept the defendants' claim that the fund had waived its right to refuse to accept liability by virtue of the fund's letter of March 17, 1992. The board indicated that it did not think that a waiver was possible because it is well established that there had to be strict compliance with the notice provisions of the act, including § 31-349. Opining that because the fund was a creature of statute the powers of which were defined and limited by statute, the board maintained that representatives of the fund did not "have the power to waive the jurisdictional requirements of the very statutes that define the Fund's duties and liabilities."

Similarly, the board rejected the claim that the fund should be estopped from denying acceptance of the case and, in doing so, did not agree with the defendants' claim that the fund was not a governmental agency for the purposes of estoppel. Rather, it chose to follow its own decision in *Dos Santos* v. *F. D. Rich Construction Co.*, 12 Conn. Workers' Comp. Rev. Op. 64 (1994), because of the limits on the fund's representatives to circumvent statutory requirements. Noting that, as to estoppel, the defendants would have to prove detrimental reliance on the alleged action of the fund's representatives, the board did not accept the estoppel claim. It gave two reasons for denying that claim: the inability of the fund representatives to waive jurisdictional requirements and the statement by fund representatives

concerning the alleged acceptance of the plaintiff's claim in 1992, "long after the statutory time limit for producing a copy of the agreement or award had already expired." The board affirmed the decision of the commissioner and this appeal followed.

On appeal, the defendants first claim that the notice provisions of § 31-349 do not preclude the transfer of the plaintiff's claim to the fund. Included within that claim are the defendants' arguments that the board applied the wrong standard to this claim, that the board improperly interpreted the notice provision of § 31-349 in saying that it required that the fund be given a voluntary agreement by a specific date, that their construction of the statute satisfies the purposes of the notice requirement and that they did satisfy the notice requirements of § 31-349. Second, they claim that the fund is estopped from denying liability for the plaintiff's claim and that the fund is not a governmental agency. Third, they claim that the fund has waived any defense of improper notice pursuant to § 31-349.

On the other hand, the fund claims, first, that the board correctly found that the defendants' notice of claim for transfer was not timely filed as required by § 31-349 and that it, therefore, properly denied their claim for transfer to the fund. Second, it claims that the defendants cannot invoke estoppel because the elements of estoppel are lacking in this case. Third, it claims that there has been no waiver.

I

In arguing that the notice provisions of § 31-349 do not preclude the transfer of liability to the fund, the defendants claim that the board applied "the wrong legal standard." They maintain that the board improperly relied on its own decision in *Dos Santos* v. *F. D. Rich Construction Co.*, supra, 12 Conn. Workers' Comp. Rev. Op. 64, in which the defendants contend that the

board "interpreted the statute as requiring a respondent seeking to transfer liability to the Fund to supply it with an approved voluntary agreement."[7]

The defendants claim the statute "does not require that the Fund be given a voluntary agreement by a specific date." They contend that the statute imposes three requirements: "First, the employer or insurance carrier shall, ninety days prior to the expiration of the one hundred four weeks of disability, notify the fund of the pending case. Second, the employer or insurance carrier shall furnish the Fund with a copy of the voluntary agreement or award with documentation supporting the claim. Third, the employer or insurance carrier shall make available to the Fund any medical records that are requested." They claim that "while the statute contains a specific time period within which to give notice, there is no time period within which to provide the voluntary agreement or award, the supporting documentation and the medical records." All that the statute requires, they argue, is that the other materials be furnished.[8]

---

[7] In making this claim, the defendants cite the board's opinion. In doing so, they do not mention that the board's opinion cites the *Dos Santos* and *Reising* opinions as "two recent decisions" that followed *Kramer* v. *General Electric Co.*, supra, 37 Conn. Sup. 742.

They also claim that the Supreme Court's decision in *Dos Santos* v. *F.D. Rich Construction Co.*, 233 Conn. 14, 658 A.2d 83 (1995), "erodes the basis of the [board's] decision here" and later say "the [board's] decision, whose basis has been destroyed, at a minimum should be reversed and the case remanded for reconsideration of the [defendants'] claim in light of the Supreme Court's recent statement of the law." This latter global assertion, i.e., that the "basis" of the board's decision has been "destroyed," is not quite the case, as we discuss later in this opinion.

[8] The applicable notice provision of General Statutes (Rev. to 1989) § 31-349 (a) provides: "As a condition precedent to the liability of the second injury fund, the employer or his insurance carrier shall, ninety days prior to the expiration of the one-hundred-four-week period, notify the custodian of the second injury fund of the pending case and shall furnish to said custodian a copy of the agreement or award together with all information purporting to support his claim as to the liability of the second injury fund,

In taking this position, the defendants say that the court need look no further than the words of the statute itself "because the court assumes that its language expresses the legislature's intent" and because it is bound to interpret the legislative intent "by referring to what the legislative text contains, not by what it might have contained." In addition, to arrive at legislative intent, it is urged that the whole statute must be considered, including its punctuation.

The defendants then argue that it is significant that the legislature, in its 1971 amendment, Public Acts 1971, No. 447, § 1, inserted the phrase "ninety days prior to the expiration of the one-hundred-four-week period" between "must" and "notify the custodian of the second injury fund of the pending case" in the first part of the statute and set it off by commas. They argue that the language "ninety days prior to the expiration of the one-hundred-four-week period . . . was not, however, repeated at all in connection with 'shall furnish to said custodian a copy of the agreement or award' or 'shall make available to the custodian all medical reports as the custodian shall desire' " in the latter part of the statute. They note, however, that the legislature did include the word "shall" in each case, thereby making "the provision of each category of document mandatory," whereas, they stress, the ninety day provision is not repeated. The effect of this, they contend, is to make the provision of information mandatory, but to place a time requirement only upon notification of the pendency of the case to the fund. They contend that, therefore, it must be presumed that the ninety day time period applies only to "[notifying] the custodian of the second injury fund of the pending case." We do not agree.

and shall make available to the custodian all medical reports as the custodian shall desire. . . ."

In their brief, the defendants discuss two cases that they contend support their interpretation of the statute. They are *Vachon* v. *General Dynamics Corp.*, 29 Conn. App. 654, 617 A.2d 476 (1992), cert. denied, 224 Conn. 927, 619 A.2d 852 (1993), and *State* v. *Dennis*, 150 Conn. 245, 188 A.2d 65 (1963). Neither case provides the support claimed.

In *Vachon*, this court addressed § 31-297 (b),[9] then a part of the act. In that case, the defendant employer .appealed from a decision of the board that found § 31-297 (b) to require service of the notice contesting the employee's right to compensation within the twenty day period specified by that statute not only on the commissioner but also on the employee. We reversed the board's decision.

In *Vachon*, however, the statute involved was structured differently from § 31-349. There, the question was whether the statute required an employer desiring to contest liability to send the statutorily prescribed notice "on or before the twentieth day after he has received a written notice of [employee's] claim" to the employee

---

[9] General Statutes (Rev. to 1991) § 31-297 (b) provides: "Except as provided in subsection (c) of this section, whenever liability to pay compensation is contested by the employer, he shall file with the compensation commissioner, on or before the twentieth day after he has received a written notice of claim, a notice in accord with a form prescribed by the commissioners stating that the right to compensation is contested, the name of the claimant, the name of the employer, the date of the alleged injury or death and the specific grounds on which the right to compensation is contested, and a copy thereof shall be sent to the employee. If the employer or his legal representative fails to file the notice contesting liability within the time prescribed herein, the employer shall be conclusively presumed to have accepted the compensability of such alleged injury or death and shall have no right thereafter to contest the employee's right to receive compensation on any grounds or the extent of his disability, provided the employer shall not be conclusively presumed to have accepted compensability when the written notice of claim has not been properly served in accordance with section 31-321 or when the written notice of claim fails to include a warning that the employer shall be precluded from contesting liability unless a notice contesting liability is filed within the time period set forth in this section."

as well as to the compensation commissioner within the twenty day period. *Vachon* v. *General Dynamics Corp.*, supra, 29 Conn. App. 659. We found that the statute was plain and unambiguous. Id. In that case, the language requiring the employer to file his notification of contestability to the commissioner immediately follows "employer," is set off by commas and may be fairly regarded as being in apposition to "employer" and grammatically connected to it. Immediately after the clause containing the "twentieth day" language, five separate matters that must appear on the contestability form are set out at some length. Finally, immediately thereafter appears the language "and a copy thereof shall be sent to the employee." Given the lack of proximity of the twenty day time limitation to the requirement that a copy be sent to the employee, we held that the twenty day limitation was not intended to apply to that requirement. If the legislature had so intended, it would have added the phrase "on or before the twentieth day after he has received written notice of the claim" immediately following the phrase "a copy thereof shall be sent to the employee." Id., 659.

The grammatical structure of § 31-349, however, is quite different from that of § 31-297 (b). The statutory language in *Vachon* sought to be connected with the twenty day limit in § 31-297 (b) was so remotely located that the permissible reach of the notice requirement had been exceeded. To have decided otherwise would have gone beyond the legislative intent. That is not at all so in the notice requirement of § 31-349.

While urging that *Vachon* supports their interpretation, the defendants have not fully analyzed certain language of significance in the 1971 amendment that is a crucial part of this statute. That language is: "As a condition precedent to the *liability* of the second injury fund, the employer or his insurance carrier shall . . . ." (Emphasis added.) This clause is key to what follows.

The word "as," when used in some connections, may import a contingency. See *Colt* v. *Hubbard*, 33 Conn. 281, 285–86 (1866); 6A C.J.S. As, p. 298. It does so here, particularly as it is immediately followed by the words, "a condition precedent." That latter phrase can fairly be defined in this statutory context as a fact or condition that the legislature intended must exist or take place before there is liability on the part of the fund. See *Lach* v. *Cahill*, 138 Conn. 418, 421, 85 A.2d 481 (1951); Black's Law Dictionary (6th Ed. 1990). The "[a]s a condition precedent" clause begins the sentence that declares what must be done to impose liability. The placement of the "ninety days prior" language precedes everything that must be done to impose liability on the fund. To say that it applied only to the giving of notice of the pendency of the case would not give meaning to the plain language of the statute, nor would it further the legislative intent that the fund be notified "promptly" of pending cases, and that it have "immediate access" to medical reports in order to assess "promptly its liability," to establish "immediately its financial reserves" and to afford it a "reasonable time" to "investigate the claim and to prepare to meet it." *Plesz* v. *United Technologies Corp.*, supra, 174 Conn. 188; *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 618 A.2d 1340 (1993); *Kiernan* v. *Roadway Express, Inc.*, 15 Conn. App. 625, 630, 545 A.2d 1158, cert. denied, 210 Conn. 801, 553 A.2d 615 (1988). *Vachon* does not support the interpretation advanced by the defendants.

In like fashion, we are not persuaded by the citation of *State* v. *Dennis*, supra, 150 Conn. 245, in support of their interpretation. In that case, the interpretation of General Statutes (Rev. to 1958) § 53-21[10] was at issue.

---

[10] General Statutes (Rev. to 1958) § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life, or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall

In *Dennis*, the defendant argued that the second part of the statute was neither contained in a separate sentence nor set apart by a semicolon, but merely by a comma; id., 248; and that that structure and punctuation demonstrated a legislative intent that the words "wilfully or unlawfully" qualified "does" in the second part of the statute, as well as "causes or permits" in the first part. While acknowledging that punctuation is a recognized, but not conclusive, aid to statutory construction; see *Connecticut Chiropody Society, Inc.* v. *Murray*, 146 Conn. 613, 617, 153 A.2d 412 (1959); the *Dennis* court rejected the defendant's argument. Although punctuation is an aid to statutory construction, punctuation may be disregarded when it leads to results inconsistent with the apparent intent of the legislature. *Kubis* v. *Cornwall*, 95 Conn. 720, 723, 112 A.2d 663 (1921); see 2A Sutherland, Statutory Construction (5th Ed. 1992) § 47.15.

In *Dennis*, the court laid great stress on the use of the disjunctive "or" between the two parts of the statute as indicating "a clear legislative intent of separability." See *State* v. *Dennis*, supra, 150 Conn. 248. After rejecting the defendant's punctuation argument and stressing the effect of the disjunctive "or" in separating the statute into two parts, the court examined the statutory history to demonstrate that changes in its wording and in the tense of operative verbs were not to be considered as altering the meaning and effect of the statute. Id., 249.

In the case before us, the defendants argue that the *Dennis* court found it significant that the phrase "wilfully or unlawfully" was inserted between "shall" and "cause or permit" in the first part of the statute, but was not repeated at all in connection with "does any

be fined not more than five hundred dollars or imprisoned not more than ten years or both."

act" in the second part. There, the court concluded that the phrase "wilfully or unlawfully" modified "cause or permit" only. An examination of *Dennis* discloses that that court did find that earlier changes in the statute were "significant," but also that "[t]hese changes . . . cannot be considered as manifesting an intent to alter the effect and meaning of the statute." Id., 249. In *Dennis*, the use of the disjunctive "or" clearly signaled the legislative intent of separability. We do not find *Dennis* persuasive because there is no such language of disjunction in § 31-349.

Next, the defendants claim that their interpretation of § 31-349 finds further support in its legislative history. They point out that at one time § 31-349 provided in part: "[N]inety days prior to the expiration of the one-hundred-four week period, the employer or his insurance carrier shall notify the custodian of the second injury fund of the pending case and shall furnish to said custodian a copy of the agreement or award, and shall make available to the custodian such medical reports as the custodian shall desire." They indicate, however, that in 1971 that language was amended and the phrase "ninety days prior to the expiration of the one-hundred-four-week period" was moved from its original position as the opening part of the sentence and inserted between the verb "must" and the phrase "notify the custodian of the second injury fund of the pending case." Public Acts 1971, No. 447, § 1. In urging this legislative history as support for their interpretation, the defendants refer to certain tenets of statutory construction, such as that when the legislature changes a statute, there is a presumption that there is a purpose for it, and that, when a statute is amended, it is presumed that the legislature intended to change the meaning of the statute. They then assert that "if, as the court stated in *Plesz* v. *United Technologies Corp.*, [supra, 174

Conn. 188–89] (interpreting earlier version of statute),[11] that the original legislation required that the agreement be furnished prior to the ninety day period . . . then the amendment must have changed the requirement, otherwise it would be meaningless." The defendants submit that this change made by the 1971 amendment was done to make the ninety day requirement applicable solely to notifying the fund custodian of the pending case. We do not agree with these claims.

In discussing the changes in § 31-349 wrought by the 1971 amendment, the defendants, contrary to accepted tenets of statutory construction, do not fully analyze certain new language that the legislature inserted at the beginning of the very sentence in which they stress the movement of the words "[n]inety days prior to the expiration of the one hundred four week period." A court must interpret the statute as written and it is to be considered as a whole and is not to treat any word as superfluous. *Orticelli* v. *Powers*, 197 Conn. 9, 14, 495 A.2d 1023 (1985); *Peck* v. *Jacquemin*, 196 Conn. 53, 66, 491 A.2d 1043 (1985). We are primarily concerned here with the language, "As a condition precedent to the liability of the second injury fund" vis-a-vis the remaining language of the sentence. This sentence begins with language that demonstrates clearly that compliance is required with that which is set out later in that sentence. It declares what the legislature intended that the employer or its insurance carrier must do precedent to the *liability* of the second injury fund. In determining what action is incumbent on the defendants in the context of the statutory scheme, the court "search[es] for an effective construction that reason-

---

[11] The 1969 statute, which was operative in the *Plesz* case, provides: "Ninety days prior to the expiration of the one-hundred-four-week period, the employer or his insurance carrier shall notify the custodian of the second injury fund of the pending case and shall furnish to said custodian a copy of the agreement or award, and shall make available to the custodian such medical reports as the custodian shall desire."

ably accords with the legislature's intent." *Davis* v. *Norwich,* 232 Conn. 311, 319, 654 A.2d 1221 (1995).[12]

Even where statutory language is susceptible to more than one plausible interpretation, the court looks to the statute's legislative history and the purpose the statute is to serve in order to ascertain and to give effect to the intent of the legislature. *Davis* v. *Norwich,* supra, 232 Conn. 319. Our Supreme Court in *Davis,* in addressing the 1971 amendment adding the present notice provision, quoting with approval *Vaillancourt* v. *New Britain Machine/Litton,* supra, 224 Conn. 392, stated: "The object of the ninety-day statutory notice is to enable the fund to be apprised promptly of such a claim being made, to obtain a copy of the agreement or award and to have *immediate* access to all medical reports. Such information is essential to enable the fund to assess *promptly* its alleged liability and to establish *immediately* its financial reserves. A further objective is to give the fund a reasonable period of time within which to investigate the claim and to prepare to meet it." (Emphasis added; internal quotation marks omitted.) *Davis* v. *Norwich,* supra, 321. It is well settled that notice provisions under the act should be strictly construed. *Vaillancourt* v. *New Britain Machine/Litton,* supra, 395, and cases there cited; *Kiernan* v. *Roadway Express, Inc.,* supra, 15 Conn. App. 630; see *Kramer* v. *General Electric Co.,* supra, 37 Conn. Sup. 742. We note that this same language from *Davis* was originally used in *Plesz,* again quoted in *Vaillancourt* and later in *Davis.*[13] See also *Kramer* v. *General Electric Co.,* supra, 744.

[12] Although *Davis* involved the appellant widow's claim for death benefits under the act, the Supreme Court in that case did discuss the 1971 amendment to § 31-349 adding the present notice provision. *Davis* v. *Norwich,* supra, 232 Conn. 321. In doing so, it specifically discussed No. 447, § 1, of the Public Acts of 1971, which is the section we are construing. Id.; *Plesz* v. *United Technologies Corp.,* supra, 174 Conn. 186.

[13] We note that the *Davis* court quoted this language from *Vaillancourt,* which in turn had quoted the identical language set out in *Plesz* v. *United*

We conclude that the intent of the legislature in passing the 1971 amendment was to require that, as a condition precedent to the liability of the fund, the employer or the insurance carrier do all those things specified in that sentence within "ninety days prior to the expiration of the one-hundred-four-week period . . . ." That means notifying the custodian of the fund of the pending case, furnishing to that custodian a copy of the agreement or award together with all information purporting to support his claim as to the *liability* of the fund and making available to the custodian all medical reports desired by that custodian. All these requirements, underlined by the use of the mandatory "shall" throughout, demonstrate in the composite what is necessary, "as a condition precedent to the liability" of the fund, to be done within the ninety day period.

In addition, the defendants attack *Kramer*'s reference to the legislative history of the 1971 amendment, which that court maintains "reveals no intention on the part of the legislature to make the requirements that the employer must fulfill less strict." *Kramer* v. *General*

*Technologies Corp.*, supra, 174 Conn. 188. While the precise issue in *Davis*, *Vaillancourt* and *Plesz* was not the same as that before us, the position of the Supreme Court has been consistent with the purpose of the notice provision as it presently exists, at the time *Davis* and *Vaillancourt* were decided and at the time *Plesz* was decided. *Plesz* involved the statute as it stood *before* the 1971 amendment. In *Plesz*, the statute was quite similar to the present statute except that the statute in *Plesz* did not contain the "As a condition precedent to the liability of the second injury fund" language. We do not regard the change from "must" in the *Plesz* statute to "shall" in the 1971 amendment as significant. In construing legislative enactments the synonymous terms "must" and "shall" are generally regarded as mandatory. *State* v. *District Court*, 106 Mont. 272, 278, 76 P.2d 634 (1938). Nor is it of significance that the first "shall" in the present statute by the 1971 amendment is placed where it is. We believe that its location is grammatically correct and, more to the point, it accords with common sense and legislative intent to have it there. In addition, with the elimination of "must," the use of "shall" three times as to matters to be done to impose liability on the fund underscores the mandatory tenor of the notice provisions of § 31-349 under our construction of the statute.

*Electric Co.*, supra, 37 Conn. Sup. 744 n.2. The attack by the defendants on *Kramer*, which stands for the proposition that liability cannot be imposed on the fund unless the employer or its insurance carrier performs, ninety days prior to the expiration of the 104 weeks, all those acts that we have determined must be so performed, is not persuasive.

The defendants do agree, however, in their brief, that "the [legislative] history reveals an intent that the Second Injury Fund not accept liability for payment until the claim has been fully documented," but they suggest "that the statute and its history also reveal an intent to eliminate the time requirements for submitting the voluntary agreement and the medical records." They point out: "In fact, in his statement regarding the purpose of the bill, Senator [Wilbur] Smith stated 'that the custodian of the Second Injury Fund *shall accept liability* for payment *after the case has been completely documented* as to injuries sustained and benefits paid and the liability of the Fund is demonstrated.' " See 14 S. Proc., Pt. 6, 1971 Sess., pp. 2561–62. The defendants claim, however, that there is "no statement that the Fund would accept liability only if the case was completely documented ninety days prior to the expiration of the one hundred four weeks of disability." The statement just quoted is, however, the second paragraph of Senator Smith's remarks on that occasion; an examination of the first paragraph of his two paragraph statement, we submit, suggests that more is required than the notification "of the pending case" within the ninety days. The first paragraph states: "Section 31-349 of the 69 Supplement to our General Statutes is amended. Second Injury Fund will accept liability for compensation to an injured employee, when his employer or insurer, ninety days prior to the expiration of the 104 week period, applies[14] with the following requirement:

[14] Although the word "applies" is the word that appears in 14 S. Proc., Pt. 6, 1971 Session, p. 2561, it is fair to assume from the context that there is

Custodian of the second injury fund must be notified of the pending date and be furnished with a copy of the award or agreement, together with all information supporting employer's or his insurance claim as to the liability of the second injury fund. All medical reports as the custodian required shall be supplied by the employer or his insurer. In the event that the custodian rejects the claim for benefits from the second injury fund, the case shall be submitted to the commission having jurisdiction as promptly as possible. The employer or his insurer shall continue to have liability until the case is decided." 14 S. Proc., Pt. 6, 1971 Sess., p. 2561. We submit that the entirety of Senator Smith's remarks does not advance the claim of the defendants made as to the 1971 amendment.

We cannot accept the defendants' claims that their interpretation of the statute satisfies the purpose of the notice requirement and that they satisfied the notice requirement. They claim that it is undisputed that the fund received timely notice of the pending claim; that much is correct. They also say that the fund received *all* of the medical reports and that it received the voluntary agreement after it had been approved. They, therefore, claim that the fund had "all of the information it needed to assess its liability and to establish its financial reserves."

As stated previously, it is agreed that July 5, 1991, was the ninetieth day prior to the expiration of the 104 week period. Although the parties had signed the voluntary agreement by March 18, 1991, well before the July 5, 1991 cutoff date, it was not until February 10, 1992, 219 days after July 5, 1991, that the defendants furnished a copy of that agreement to the fund. This occurred after three letters from the fund calling to the

a typographical error, and that the word "applies" clearly was meant to be "complies."

defendants' attention that "your notice to the Fund is incomplete" and "lacks necessary *approved* voluntary agreement or award." (Emphasis in original.)

We cannot subscribe to a result of open-ended, unlimited time "compliance" suggested by the defendants, which we believe would thwart the intent of the notice provision. See *Stamford Ridgeway Associates* v. *Board of Representatives*, 214 Conn. 407, 426, 572 A.2d 951 (1990); *Evening Sentinel* v. *National Organization for Women*, 168 Conn. 26, 31, 357 A.2d 498 (1975). In rejecting this result, we keep in mind that our Supreme Court has said: "We conclude that the giving of timely notice is *the* condition precedent to an effective transfer of liability to the Fund under § 31-349." (Emphasis in original.) *Vaillancourt* v. *New Britain Machine/Litton*, supra, 224 Conn. 396. There can, of course, be no "effective transfer of liability to the Fund under § 31-349" until *all* those materials specified in that statute have been furnished to the fund, and not just notification of the pendency of the case.

We have decided that § 31-349 does require sending an "agreement," as the Supreme Court has defined "agreement" in *Dos Santos* v. *F. D. Rich Construction Co.*, 233 Conn. 14, 22–23, 658 A.2d 83 (1995), to the fund within that ninety day period. That, however, does not avail the defendants, as they sent *no* agreement of any sort to the fund within that period. The defendants did not satisfy the notice provision of § 31-349.

## II

The defendants also claim that the fund is estopped from denying liability for the plaintiff's claim. For the purpose of examining the defendants' claim of estoppel, we assume, without deciding, that the doctrine of estoppel may be asserted against the fund. In maintaining that estoppel applies, the defendants first point out that in November, 1990, approximately fifty-eight weeks

after the subject injury, they put the fund on notice of a potential claim from the plaintiff. They then argue that "from that time, the Fund has consistently misled [the defendants] concerning its position." They note that the fund's form letter repeatedly references an "approved voluntary agreement," which, they claim, clearly implies that the fund will accept nothing other than an "approved voluntary agreement." The fund, they continue, "took this position, although it was legally incorrect." For this statement they cite the Supreme Court's decision in *Dos Santos* v. *F. D. Rich Construction Co.*, supra, 233 Conn. 22–23,[15] which was handed down on May 9, 1995, *after* the board decision that is the subject of this appeal. The fund argues that the Supreme Court's decision in *Dos Santos* is "dispositive of this case." The defendants argue that that case "is not dispositive of this appeal," but that it is supportive of their interpretation of § 31-349. The defendants state that the Supreme Court's decision in *Dos Santos* did not address the issue of statutory interpretation raised by them: "Does Section 31-349 require sending any agreement before 90 days prior to the expiration of 104 weeks of disability to perfect an otherwise proper notice to the Fund?" The defendants do maintain that the Supreme Court's decision in *Dos Santos* "erodes the basis of the [board's] decision" and, at a minimum, that the board's decision should be reversed and the case remanded for reconsideration of their claim "in light of the Supreme Court's recent statement of the law" in *Dos Santos*. Before having to resolve this latter claim, we must decide whether the defendants have proven their claims as to estoppel or waiver.

---

[15] In the decision that is the subject of this appeal, the board, in its analysis, relied on its own decision in *Dos Santos v. F. D. Rich Construction Co.*, supra, 12 Conn. Workers' Comp. Rev. Op. 64, which was appealed to our Supreme Court. In the Supreme Court's subsequent decision in that case, the court reversed the board's decision and ordered further proceedings. The Supreme Court did not reach the issue of estoppel, which the board had reached and decided in its decision.

In *O'Sullivan* v. *Bergenty*, 214 Conn. 641, 648, 573 A.2d 729 (1990), our Supreme Court stated: " ' "under our well-established law, any claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. *Bozzi* v. *Bozzi*, 177 Conn. 232, 242, 413 A.2d 834 (1979); *Dupuis* v. *Submarine Base Credit Union, Inc.*, [170 Conn. 344, 353, 365 A.2d 1093 (1976)]; *Pet Car Products, Inc.* v. *Barnett*, 150 Conn. 42, 53–54, 184 A.2d 797 (1962)." *Zoning Commission* v. *Lescynski*, [188 Conn. 724, 731, 453 A.2d 1144 (1982)].' *Kimberly-Clark Corporation* v. *Dubno*, 204 Conn. 137, 148, 527 A.2d 679 (1987)." *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 563, 316 A.2d 394 (1972); *Palumbo* v. *Papadopoulos*, 36 Conn. App. 799, 801, 653 A.2d 834 (1995). Estoppel requires proof of misleading conduct by one party resulting in detrimental reliance by the one claiming estoppel. *Hunt* v. *Friedman*, 6 Conn. App. 720, 722, 507 A.2d 498 (1986); *Latimer Point Management Corp.* v. *Anderson*, 1 Conn. App. 310, 313, 471 A.2d 670 (1984). The party claiming estoppel has the burden of proof, and whether that burden has been satisfied in a particular case is a question of fact. *Middlesex Mutual Assurance Co.* v. *Walsh*, 218 Conn. 681, 689, 590 A.2d 957 (1991); *Palumbo* v. *Papadopoulos*, supra, 801.

As stated previously, the defendants maintain that the fund "consistently misled"[16] them since November, 1990, by implying that it would not accept anything but an "approved, or voluntary agreement" before

---

[16] In its brief, the fund states: "At no time during the initial proceeding did the [defendants] offer any evidence by testimony or exhibits, that its non-submission of the voluntary agreement by July 15, 1991 [sic], was influenced by the Fund's alleged acceptance statements in 1992."

accepting transfer of the plaintiff's claim. In addition, they contend that once they supplied the fund with an approved voluntary agreement, the fund represented in writing that the plaintiff's "October 3, 1987 injury qualifies for transfer to the Fund." They claim that, in reliance on the fund's conduct, they did not challenge the "[c]ommission's suggestion" that the plaintiff be paid § 31-308a benefits at that time although "it . . . could have done so."

We begin with a definition of "mislead." Webster defines it as meaning "to lead in a wrong direction or into a mistaken action or belief." Webster's Third New International Dictionary. Black defines "misleading" as "Delusion; calculated to lead astray or to lead into error." Black's Law Dictionary (6th Ed. 1990). We do not agree that the defendants were "consistently misled" as claimed.

There is no question that the three so-called "reminder letters" from the fund to the defendants of December 4, 1990, January 8, 1991, and March 17, 1991 each stated: "Your notice to the Fund is incomplete as of this date because it: Lacks necessary *approved* voluntary agreement or award. . . ." (Emphasis in original.) These letters were all well in advance of the July 5, 1991 cut-off date under § 31-349. More to the point, these letters predate, by several years, our Supreme Court's decision in *Dos Santos*. In addition, the state of our decisional law was the same, not only at the time the board decided the defendants' appeal, but also through the time that the defendants took their appeal to this court. It was not until the Supreme Court's decision in *Dos Santos* that the term "agreement" in the notice provision of § 31-349 was defined in the manner that the defendants now claim. We note that in that case, the agreement, although not approved and not signed by the claimant, was presented to the fund within the ninety day statutory period. Moreover, administra-

tive agencies must necessarily interpret statutes that are made for their guidance. *Eagle Hill Corp.* v. *Commission on Hospitals & Health Care*, 2 Conn. App. 68, 76, 477 A.2d 660 (1984). Ordinarily, deference is afforded "to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes." *Dept. of Administrative Services* v. *Employees' Review Board*, 226 Conn. 670, 678, 628 A.2d 957 (1993). We conclude that the board and the trial commissioner acted pursuant to the state of the law as it existed when they acted. We have already pointed out the purposes of the notice provisions of § 31-349 in affording the fund an expeditious method of assembling the required information so as to enable it thoroughly to assess that information and to provided for its fiscal potential. The trial commissioner in this case also pointed out the absence of an approved voluntary agreement prior to the expiration of the ninety day period, as did the board based on the then state of the law. We cannot fault the board or the fund for acting on the state of the law as it existed when they made their decisions. Parenthetically, we note that, despite their present claim, the defendants made no effort, on the record before us, to try to have the fund accept liability for the plaintiff's claim prior to the expiration of the ninety day period by the proffer of any agreement at all.

We now turn to the defendants' claim that the fund, by its letter of March 17, 1992,[17] agreed to accept the plaintiff's claim. In arguing for the force of this letter, the defendants focus on the word "qualifies" to support their claim of fund acceptance of liability. At oral argument, the defendants' counsel implied that "qualifies,"

---

[17] The body of that letter states: "This is a follow-up to our discussion of the case on February 10, 1992. The October 3, 1989 injury qualifies for transfer to the Fund. Please kindly forward transfer agreement and accounting for review."

as used in that letter, meant "has qualified." When asked, however, whether it could also be read to mean that the October 3, 1989 injury *"will* qualify if the transfer agreement and accounting were forwarded," (emphasis added) he conceded that it could also be read in that fashion. We read it in the latter manner.

The defendants claim, however, not only that the fund's letter of March 17, 1992, misled them into believing that it accepted the plaintiff's claim, but that the fund also agreed "to accept the case at an informal hearing on June 5, 1992." For this latter claim, the defendants refer to the board's opinion, which states in part: "On March 17, 1992, a representative of the Fund wrote to [defendants'] counsel informing him that the claimant's injury 'qualifies for transfer to the Fund.' A representative of the Fund confirmed the agreement to accept the case at an informal hearing held on June 5, 1992." The trial commissioner, who is the fact finder, made no such finding concerning any informal hearing of June 5, 1992, and, actually, did not say anything about any informal hearing at all. There is no admission in the record that the fund "confirmed" this "agreement," there is nothing in the record concerning this "informal hearing"[18] to substantiate this "confirmation," and there is nothing in the record to show that the board took additional evidence or testimony to substantiate that

---

[18] We note that there is a statutory vehicle concerning informal hearings that does concern agreements between parties.

General Statutes § 31-297a, entitled "Informal hearings," provides: "In any informal hearing held by the commissioner or chairman of the workers' compensation commission in regard to compensation under the provisions of this chapter, any recommendations made by the commissioner or chairman at the informal hearing shall be reduced to writing and, if the parties accept such recommendations, the recommendations shall be as binding upon both parties as an award by the commissioner or chairman. The commissioner or chairman shall not postpone any such informal hearing if one party fails to attend unless both parties agree to the postponement." See A. Sevarino, Connecticut Workers' Compensation after Reforms (1994), p. 25 et seq.

"confirmation" observation. The board hears the appeal on the record of the hearing before the commissioner, who finds the facts. Moreover, "[t]he decision of the compensation review division shall include its findings and award and conclusions of law. . . . [T]he review division's hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is oblig[ated] to hear the appeal on the record and not 'retry the facts. . . . [T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . [T]he conclusions drawn by him from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them.' " (Citations omitted; internal quotation marks omitted.) *Crochiere* v. *Board of Education*, 227 Conn. 333, 346–47, 630 A.2d 1027 (1993); *Muldoon* v. *Homestead Insulation Co.*, 231 Conn. 469, 475–76, 650 A.2d 1240 (1994). The trial commissioner made no reference in his decision to any informal hearing. Given the record before us and the function of the board on an appeal, we cannot accept this "confirmation" of acceptance of the claim alleged by the defendants.

We conclude, therefore, that the defendants have not demonstrated that the fund "consistently misled" them as claimed. Specifically, they have not proven their detrimental reliance on representations of the representatives of the fund. See *Hunt* v. *Friedman*, supra, 6 Conn. App. 722; *Latimer Point Management Corp.* v. *Anderson*, supra, 1 Conn. App. 313.

### III

We now turn to the defendants' claim of waiver. They argue that "it is clear that the Fund waived any defense of improper notice under Section 31-349. The Fund has consistently taken the position that proper notice under Section 31-349 required an approved voluntary

agreement, and could not otherwise be satisfied. This position is legally incorrect." It is true that the Supreme Court in its 1995 decision in *Dos Santos* held that an approved voluntary agreement need not be sent to the fund when parties such as these defendants seek to transfer liability to the fund. This decision, of course, was handed down after both the commissioner and the board had already decided the issues that generated this appeal. There cannot, therefore, be any cognizable claim by the defendants that this was the state of the law before the Supreme Court's decision in *Dos Santos*. In discussing the claim of waiver, we assume, without deciding, that waiver is applicable to the fund.

Waiver is the intentional abandonment of a known right. *Brown* v. *Employer's Reinsurance Corp.*, 206 Conn. 668, 675, 539 A.2d 138 (1988); see *Novella* v. *Hartford Accident Indemnity Co.*, supra, 163 Conn. 562. "Waiver is the voluntary relinquishment of a known right. It involves the idea of assent, and assent is an act of understanding. . . . Intention to relinquish must appear, but acts and conduct inconsistent with intention to [relinquish] . . . are sufficient." *MacKay* v. *Aetna Life Ins. Co.*, 118 Conn. 538, 547–48, 173 A. 783 (1934); see *Phoenix Mutual Life Ins. Co.* v. *Brenckman*, 148 Conn. 391, 396, 171 A.2d 194 (1961). Waiver is a question of fact for the trier. *Brauer* v. *Freccia*, 159 Conn. 289, 295, 268 A.2d 645 (1970). At bottom, there must be a "right" that is capable of being waived. As a general matter, rights granted by statute may be waived unless the statute is intended to protect the general rights of the public rather than private rights. 28 Am. Jur. 2d, Estoppel and Waiver, § 164. Rights conferred by constitutions or statute may be waived provided such rights and privileges rest in the individual and are intended for his sole benefit. See 92 C.J.S. Waiver, p. 1066; *Eleven Eleven Book Center, Inc.* v. *Ribaudo*, 86 Misc. 2d 17, 19–20, 381 N.Y.2d 643 (1976). Where there

is a statutory duty to be performed by those charged with administering that statute, such " 'a law established for a public reason cannot be waived or circumvented by a private act or agreements.' " *Mary R.* v. *B. & R. Corp.,* 149 Cal. App. 3d 308, 317, 196 Cal. Rptr. 871 (1983); see *Cambridge* v. *Commonwealth,* 306 Mass. 358, 362, 28 N.E. 447 (1940). "A statute declares public policy." *Laurel Bank & Trust Co.* v. *Mark Ford, Inc.,* 182 Conn. 437, 442, 438 A.2d 705 (1980).

It is clear that the fund, through its representatives, had the statutory duty to accept the transfer of a claim only after the receipt by it of the required information, which includes a copy of the agreement, within ninety days before the expiration of the 104 weeks disability. It is also clear that no agreement of any sort was furnished to the fund by the defendants within that period. Moreover, the failure of the defendants to do so was not the result of any action or conduct on the part of the fund or any of its representatives. On this matter of waiver, the defendants also have not demonstrated that there was even a "right" existing on the part of the fund or its representatives to waive its statutory obligation, as public employees acting pursuant to § 31-349, to require compliance with the notice requirement before they accepted the transfer of a claim to the fund. We, therefore, conclude that no waiver has been demonstrated.

Given our conclusions on the issues of estoppel and waiver, the ends of justice do not, therefore, even suggest, let alone demand, that the case be remanded to the board or the commission for consideration in the light of the Supreme Court's decision in *Dos Santos.*

The decision of the compensation review board is affirmed.

In this opinion the other judges concurred.