[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON THE PLAINTIFF'S MOTIONS TO STRIKE EXHIBITS AND PORTIONS OF BRIEFS
These are affordable housing appeals filed pursuant to General Statutes § 8-30g (f). The plaintiff, a developer, has appealed in Docket Number CV 00 0505223S from a denial by the Zoning Commission of the Town of Simsbury ("zoning commission") of its application for an additional zoning regulation and in Docket Number CV 000505225S from a denial by the Planning Commission of the Town of Simsbury ("planning commission") of subdivision approval. The plaintiff filed each appeal with the Superior Court on August 18, 2000, and the return of record in each case was filed on February 15, 2001. Item 218 in the zoning appeal and Item 206 in the planning appeal consist of an identical letter by a consultant to both the zoning and planning commissions (Gordon Brookman of Environmental Risk Limited (ERL)) addressed to the town planner, William Voelker; and attached to the Brookman letter is a report by a University of Connecticut professor, Emmanouil N. Anagnostou. The zoning and planning commissions have filed their briefs in each appeal, relying upon Item 218 in the zoning appeal and Item 206 in the planning appeal. The plaintiff has now moved to strike these record items in each case and to strike portions of the briefs filed by the zoning commission and the planning commission referring to the respective record items.
The plaintiff made its applications to the zoning commission and the planning commission in November 1999, and hearings began before each agency in January 2000. In April 2000, the plaintiff, pursuant to §8-30g (h), submitted a revised application decreasing the number of units in the proposed development. The hearings closed on June 29, 2000. The CT Page 1648 zoning commission denied the plaintiff's application on July 17, 2000 and the planning commission denied the application on July 25, 2000.
The realty in question was formerly used as land to grow tobacco and thus an issue arose as to the plaintiff's plan to remove or neutralize pesticide in the soil. During a planning commission hearing in January 2000[1], a citizen asked about the plaintiff's statistical methods in sampling the soil. Dr. Callahan, an expert for the commissions, gave evidence about pesticide "hot spots," but declined to discuss the statistical analyses. The plaintiff, through its expert Fuss O'Neill, filed a report discussing statistics and soil sampling on May 19, 2000 and supplementary reports on June 19, 2000 and on June 27, 2000, just as the hearings concluded. (See testimony in this court on January 17, 2002 and Exhibit 2 from January 17, 2002 hearing.) These reports prepared by Fuss and O'Neill used a statistical method known as EPA SW846. The parties do not dispute that on June 29, 2000, Brookman advised the commissions, then meeting jointly, with the plaintiff in attendance, that he intended to present an analysis from ERL after the closure of the hearing on that date.
After the close of the hearings, on July 5, 2000, the town planner, Voelker, received a letter from its advisor, Brookman of ERL, analyzing the plaintiff's position on soil remediation and its process of soil sampling. Attached to this letter was the report of Dr. Anagnostou, at issue in these motions. In his report, Dr. Anagnostou criticized the plaintiff's experts (Miller and Potterton of Fuss and O'Neill) in their use of the EPA SW846 methodology. The plaintiff sent a reply to the Brookman letter which is now in the record of each appeal. (ROR, Item 219 (zoning); Item 207 (planning)).[2]
The plaintiff first states that it never waived the issue of the appropriateness of the Anagnostou report in the record, while the commissions argue that the voluminous record was prepared with the participation of all parties to the appeal. The court agrees with the plaintiff that in its efforts to cull out the essence of the record, it was certainly possible that an attachment to the Brookman document was overlooked and its possible significance not realized. Under these circumstances, the court concludes that a waiver — a voluntary relinquishment of a known right — did not occur. A waiver involves the idea of assent, and assent is an act of understanding." (Internal quotation marks omitted.) Soares v. Max Services, Inc., 42 Conn. App. 147,175, cert. denied, 239 Conn. 915 (1996).
Reaching the merits, the plaintiff argues that the Brookman letter did not actually arrive at the commissions, and therefore neither the letter nor its contested attachment is a part of the record. The term "record" CT Page 1649 has been defined as "the record that was before the agency at the time it made the decision in issue." City of Waltham v. U.S. Postal Service,786 F. Sup. 105, 116 (D.Mass. 1992), aff'd, 11 F.3d 235 (1st Cir. 1993). "The administrative record is that which was before the agency at the time the decision being reviewed was made, and it consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." (Internal quotation marks omitted.) Towns of Norfolk Walpole v. ArmyCorps of Engineers, 137 F.R.D. 183, 185 (1991), quoting National WildlifeFederation v. Burford, 677 F. Sup. 1445, 1457 (D.Mont. 1985), aff'd,871 F.2d 849 (9th Cir. 1989). See also Camp v. Pitts, 411 U.S. 138, 142
(1973) (per curiam).
Here, there is no dispute that the Brookman letter reached the staff member, Voelker. There is also evidence (taken at a hearing before this court on January 17, 2002) that Voelker's customary procedure was to mail all materials to the commissioners upon receipt. While there is no evidence of actual receipt by any commissioner, there is sufficient evidence that the commissioners had the report before them when they voted later in July on the applications.[3] There is no requirement that either commission or any commissioner actually refer to the report in their deliberations. Huck v. Inland Wetlands Watercourses Agency,203 Conn. 525, 542 (1987) ("agency . . . is not required . . . to use in any particular fashion any of the materials presented to it").
Assuming that Dr. Anagnostou's report is actually in each record, the plaintiff then argues that it was improperly received after the close of the evidence. While a commission may not ordinarily consider a report in the record received after the hearing closes, there is a exception to this rule for technical expertise. In Norooz v. Inland Wetlands Agency,26 Conn. App. 564, 570 (1992), the Appellate Court held that it was proper for a zoning board to receive evaluative information from neutral professional advisors regarding evidence previously received. See alsoSpero v. Zoning Board of Appeals, 217 Conn. 435, 444-45 (1991).
Here, by the close of the evidence, the issue of polluted soil was in the record as was the plaintiff's proposed remedy. The plaintiff's statistical sampling techniques had become part of the record. The technical assistance exception thus applies to validate the introduction of the Anagnostou report into the record. The court does not read the cases to hold that the exception only applies when the specific issue — here a statistical technique — is fully discussed by both parties prior to the closing of the hearing. All that is required is that the professional must be commenting on evidence already in the record, even if the expert's report puts forth a different or critical view of the prior evidence. CT Page 1650
Therefore, the motions to strike are denied in both pending appeals.
Henry S. Cohn, Judge